**Thomas W. STAUSS, Plaintiff,**

v.

**INTERNAL REVENUE SERVICE, et al., Defendants.**

Civ. A. No. 80–0001.

United States District Court, District of Columbia.

June 24, 1981.

Thomas W. Stauss, pro se.

Judith A. Levinthal, U. S. Dept. of Justice, Tax Div., Washington, D. C., for defendants.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

This is an action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, in which plaintiff, appearing pro se, seeks disclosure of records compiled as part of the "tax protest project" of the Baltimore District Office of the Internal Revenue Service. The matter comes before the Court on cross-motions for summary judgment. After careful review in camera of the eighty-seven documents at issue, and upon consideration of the briefs and affidavits filed by the parties, the Court grants plaintiff's motion for summary judgment with regard to certain deletions in six of the

documents, and grants defendants' motion with regard to the remainder.

## I

By letter dated September 28, 1979, plaintiff made a FOIA request of the Internal Revenue Service (IRS) for various manuals, publications, and records pertaining to the Baltimore District Office's tax protest project. This project gathers information about tax protest movements in order to aid IRS in identifying groups and individuals who may not be complying with the tax laws, and refers the names of those who are violating the tax laws to the Criminal Investigation Staff of the Service for further investigation. By letter of October 11, 1979, the Baltimore District Director responded to plaintiff's FOIA request by providing him with manual sections, news articles, and publications as requested, but denying him access to certain records pertaining to the tax protest project pursuant to exemptions 3, 5, 7(A), and 7(C), 5 U.S.C. § 552(b)(3), (b)(5), (b)(7)(A), and (b)(7)(C). On October 13, 1979, plaintiff submitted an administrative appeal for the documents denied. IRS failed to act on this appeal within the twenty-day time limit provided by 5 U.S.C. § 552(a)(6)(A)(ii), and plaintiff, now deemed to have exhausted his administrative remedies under section 552(a)(6)(C), filed suit to compel the production of the requested documents under FOIA[1] on January 2, 1980.[2]

Of the 125 documents that were initially not released to plaintiff, 38 were provided to him at the time defendants filed their motion for summary judgment, leaving 87 documents at issue, disclosure of which was denied either in whole or in part. Defendants claim that 45 of these documents should not be released because they are entirely composed of confidential tax return information of third parties, as defined in 26 U.S.C. § 6103(b)(2). Other bases given for the withholding of all or part of requested documents are that (a) they contain names or information that indirectly identifies third parties who aided the tax protest investigation and IRS employees or agents who worked on such investigations, or they characterize third parties as tax protestors, and thus should be exempt from disclosure pursuant to section (7)(C) as "investigatory records compiled for law enforcement purposes" that "constitute an unwarranted invasion of personal privacy"; (b) they contain the identity, or information which would lead to the disclosure of the identity, of confidential sources of information for the tax protestor project, which should be exempt from disclosure under section (7)(D); and (c) they contain the addresses of individuals who either have made FOIA requests or who have corresponded with the Service, which should be exempt pursuant to section (6) as "personnel and medical and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

## II

Section 6103(a) of the Internal Revenue Code, 26 U.S.C. § 6103(a), makes tax returns and tax return information confidential, and prohibits any officer or employee of the United States from disclosing such information,[3] except in certain defined cir-

1. Plaintiff also brought action under the Privacy Act, 5 U.S.C. § 552a, and under the First and Fifth Amendments of the Constitution. However, in his motion for summary judgment, plaintiff concedes that these claims were improperly brought.

2. On April 3, 1980, the Court denied plaintiff's motion for a *Vaughn* index as premature, without prejudice to a later filing.

3. Section 6103(b)(2) defines "return information" to mean

(A) a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense, and

cumstances.[4] Such material may be withheld under the FOIA, since section 6103 is a statute exempting materials from disclosure within the meaning of exemption 3, 5 U.S.C. § 552(b)(3). *Shearn Moody, Jr. v. Internal Revenue Service, supra*, slip op. at 3; *Chamberlain v. Kurtz*, 589 F.2d 827, 838–839 (5th Cir.), *cert. denied*, 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979).[5]

█ The Court has carefully examined those documents allegedly containing return information in order to determine, first, whether they in fact do contain such information and second, whether "strategic editing" of the documents in order to segregate true return information from that which would not serve to identify the taxpayer involved might have allowed greater disclosure of these documents than that permitted by the IRS. See *Shearn Moody, Jr. v. Internal Revenue Service, supra*, slip op. at 4. From this examination, it appears that all of the enumerated documents [6] contain return information in a form that is not meaningfully segregable from otherwise disclosable information. Many of them are simply lists of taxpayer names and addresses (*e. g.*, document no. 5b); others are correspondence between the taxpayer and the IRS (*e. g.*, document no. 24b) from which information that does not iden-

tify the taxpayer could not meaningfully be extracted and released. Accordingly, the Service properly withheld these documents, and defendants' motion for summary judgment with regard thereto will be granted.

### III

Defendants have claimed an exemption for a number of documents (or parts of documents) under section (7)(C). That provision exempts from disclosure "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would ... (C) constitute an unwarranted invasion of personal privacy." The materials at issue under this exemption consist of lists of the identities and telephone numbers of individuals who cooperated with the Service as part of the tax protest project; the identities of IRS employees involved in the tax protest project, and other information which could reveal their identities (*e. g.*, one special agent's social security number); and the identities and characterizations of certain individuals whom the Service has concluded are tax protestors.

█ Plaintiff first contends that these records do not constitute "investigatory record compiled for law enforcement purposes" because the tax protest project is merely an

---

(B) any part of any written determination or any background file document relating to such written determination (as such terms are defined in section 6110(b)) which is not open to public inspection under section 6110[.]

This section goes on to exclude for the definition of "return information" data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer." This provision has been construed by the Court of Appeals of this Circuit to mean that only information posing a risk of identifying the taxpayer may be withheld, and that the District Court must determine whether or not such information could have been "meaningfully segregated" from otherwise releasable information in order to permit greater disclosure. See *Shearn Moody Jr. v. Internal Revenue Service*, No. 80–1456 (D.C.Cir. June 8, 1981); *Nuefeld v. Internal Revenue Service*, No. 80–1131 (D.C.Cir. March 9, 1981).

4. These circumstances, defined in section 6103(c)–(*o*), include disclosure under certain conditions to designees of the taxpayer, state

tax officials, a deceased person's estate, trustees in bankruptcy, committees of Congress, the President, etc. Plaintiff fits into none of these categories.

5. Exemption 3 states that FOIA requirements do not apply to matters "specifically exempted from disclosure by statute ... provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular matters to be withheld[.]" It has been held that tax return information falls under category (A). See *Chamberlain v. Kurtz, supra*, 589 F.2d at 838, n. 33, and cases cited therein.

6. The following documents were alleged to contain return information: nos. 3, 4a, 4c–4f, 4h, 5b, 9a, 9c, 9d, 10a–10f, 14a, 14e, 14f, 17c–17k, 18a–18f, 20gg, 20hh, 23b, 24b–24f, 26a–26c.

"information-gathering" project unrelated to any specific investigation. However, it is clear that this "information-gathering" comprised the first step towards further law enforcement proceedings against delinquent taxpayers (see, e. g., document no. 18e, in which it was recommended that the information gathered about the taxpayer in question be forwarded to the IRS Collection Division), and possibly leading to his indictment and eventual conviction (see document no. 24c). The government need not prove the enforcement proceedings were imminent in order to shield such files from disclosure; it need only show that they were compiled for a law enforcement purpose. *Rural Housing Alliance v. United States Department of Agriculture*, 498 F.2d 73, 80 (D.C.Cir.1974). Here it is clear that the records were compiled with the ultimate purpose of enforcement of the Internal Revenue Code, and that plaintiff's objection is therefore groundless.

■ To determine whether the release of information would constitute an unwarranted invasion of privacy under section (7)(C), the Court must balance the third party's right to privacy against the public's right to access to government information. *Deering Milliken, Inc. v. Irving*, 548 F.2d 1131 (4th Cir. 1977); *Tarnopol v. F.B.I.*, 442 F.Supp. 5, 7 (D.D.C.1977). It has been held that a privacy interest deserving of protection exists under exemption 7(C) where release of the requested information could subject a third party to embarrassment or harassment. *Maroscia v. Levi*, 569 F.2d 1000 (7th Cir. 1977); *Lamont v. Department*

*of Justice*, 475 F.Supp. 761 (S.D.N.Y.1979). Plaintiff has not alleged that any public interest would be served by the disclosure of the identities of individuals who have provided the Service with information and of those IRS employees who have worked on the tax protest project.[7] Contrasting with the minimal public interest in the disclosure of these materials is the very real possibility that cooperating individuals would be subjected to unwanted public exposure, and that the IRS employees would be subjected to harassment or annoyance in their private lives or in the performance of their official duties, should their identities be disclosed in conjunction with the investigation of tax protest groups. This balance clearly weighs in favor of these third parties' privacy interest, and of withholding the requested information pursuant to exemption 7(C).

## IV

■ Portions of four documents (nos. 3, 9a, 15d, and 15e) have been withheld pursuant to exemption 7(D), as investigatory records compiled for law enforcement purposes which would "disclose the identity of a confidential source" if produced. 5 U.S.C. § 552(b)(7)(D). "Confidential source" has been construed to refer to an individual who provides information either under an express assurance of confidentiality, or in circumstances from which an assurance of confidentiality could reasonably be inferred. *Pope v. United States*, 599 F.2d 1383, 1386 (5th Cir. 1979); *Malloy v. Department of Justice*, 457 F.Supp. 543, 546 (D.D.C.1978).

---

7. With regard to the materials said to identify certain individuals as tax protestors, plaintiff has listed two reasons why their disclosure would be in the public interest. First, disclosure would discourage tax protest activities to the extent that they are illegal, and second, disclosure might encourage public and congressional debate over tax policies that lead to protest activities. The Court finds these reasons to be somewhat specious. Not only would disclosure of the identities of and information about so-called tax protestors discourage illegal activities on their part; it would also serve to chill perfectly legal expressions of disagreement with tax policies in which investigated individuals might engage. There is no public interest in discouraging such legal activities. It is also difficult to see how revelation of the identities of individuals under investigation would lead to public debate over tax policies. The lack of public interest in disclosure of this information contrasts with the potential invasion of the privacy of these individuals, about whom certain personal information has been gathered by the IRS (pertaining to meetings they have attended, letters they have sent, etc.), but whose activities may well be entirely free of wrongdoing. Disclosure would constitute an "unwarranted invasion of personal privacy" for these third parties, and the withholding of the information pursuant to exemption 7(C) was proper.

In the present case, there apparently were no express assurances of confidentiality. The affidavit of Dorrance Warnock, chief of the Criminal Investigation Division of the IRS in the Baltimore District, states that information was provided to an IRS special agent "under circumstances in which the source was led to believe that his identity would be kept confidential," (Warnock Affidavit, p. 3), and the substance of one of the documents (document no. 3) clearly shows this to be the case.[8] It was therefore appropriate for the Service to have excised from released documents portions which directly disclose this source's identity or which contain information that might lead to such disclosure.

### V

[■] Finally, deletions of the addresses of individuals requesting information from the IRS (in one instance through informal correspondence, in the rest, through formal FOIA requests) from six documents (nos. 13, 19a–19e) were made by defendants pursuant to section 552(b)(6), which exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwanted invasion of privacy." To determine whether or not the records containing these addresses constitute "similar files" under exemption 6, the Court must decide whether the privacy interest involved in the information within the files "is of the same magnitude—as highly personal or as intimate in nature—as that at stake in personnel and medical records. If the personal quality of the information rises to this level, then it is 'similar' to personnel and medical files within the meaning of Exemption 6." *Board of Trade of the City of Chicago v. Commodity Futures Trading Commission*, 627 F.2d 392, 398 (D.C.Cir.1980). The privacy interest involved in the addresses of these individuals does not rise to such a level of intimacy. They freely and voluntarily addressed their inquiries to the IRS, without a hint of expectation that the nature and origin of their correspondence would be kept confidential. There is nothing within these documents that would warrant their treatment on a par with materials as essentially private as personnel or medical records.[9] Therefore, the addresses in question do not fall under the FOIA exemption for "similar files," and the Court finds that they were improperly withheld from plaintiff. Accordingly, the IRS[10] will be directed to release these addresses to plaintiff in the Order accompanying this Memorandum.

---

**8.** It appears from this document that the "source" became "uncooperative" and "upset" whenever he thought that the special agent might inform others of his discussions with the Service, and that he was told that the agent would not inform these people of his call.

**9.** Where these documents do incorporate tax return information, or identify IRS employees, the deletions made by the IRS were entirely proper. See pp. 1221–1222, *supra*.

**10.** Plaintiff also sued Donald L. Breihan, Acting District Director for the IRS in Maryland, in his individual capacity. Section 552(a)(4)(B) grants jurisdiction to the District Court "to enjoin the agency from withholding agency records and to other the production of any agency records improperly withheld from the complaint." Jurisdiction is not conferred over individual defendants, and the Court therefore holds that Mr. Breihan was improperly joined. See, *e. g., Weberman v. National Security Agency*, 490 F.Supp. 9, 10 (S.D.N.Y.1980).