Cynthia KING, Plaintiff,

v.

UNITED STATES DEPARTMENT OF JUSTICE, Defendant.

Civ. A. No. 81–1485.

United States District Court, District of Columbia.

Dec. 12, 1983.

Timothy Trushel, Washington, D.C., for defendant.

Charles J. Sheehan, U.S. Dept. of Justice, Washington, D.C., for plaintiff.

## MEMORANDUM OPINION AND ORDER

AUBREY E. ROBINSON, Jr., Chief Judge.

Plaintiff brings this action pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, to compel the production of certain documents. The basis of this action is a request made by Plaintiff to the Department of Justice for access to all Federal Bureau of Investigation (FBI) documents pertaining to Carol King, Plaintiff's deceased mother-in-law. Plaintiff is an author who seeks the information to aid her in writing a book about Carol King. The FBI has released fifteen hundred (1,500) pages of documents responsive to Plaintiff's FOIA request, while withholding 164 pages in their entireties and document portions thereof pursuant to 5 U.S.C. §§ 552(b)(1), (2), (3), (7)(C), (7)(D) and (7)(E). The Immigration and Naturalization Service (INS) has released two pages referred to it by the FBI with portions of the pages withheld pursuant to exemption (7)(D).

Before the Court is Defendant's Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment, or, in the alternative, to Compel Answers to Interrogatories and Response to Request for Production of Documents. In addition, Plaintiff in some instances, requests this Court to conduct an *in camera* inspection of various documents. Defendant moves for summary judgment on the ground that the invocation of each exemption is justified under the law. Plaintiff has withdrawn her opposition to many of the claims of exemption and only continues her opposition with respect to Defendant's invocation of exemptions (1), (7)(C) and (7)(D) insofar as it is invoked to withhold information provided under alleged expressed or implied assurances of confidentiality. For the reasons set forth below, Plaintiff's Motion for Summary Judgment, or, in the alternative, to Compel Answers to Interrogatories and Response to Request for Production of Documents is denied, Plaintiff's request for *in camera* inspection is denied, and Defendant's Motion for Summary Judgment is granted.

## EXEMPTION 1

5 U.S.C. § 552(b)(1), exempts from disclosure, records that are:

(A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive Order.

Defendant has withheld information pursuant to Executive Order 12065. 3 C.F.R. § 190 (1979), 50 U.S.C. § 401 note. Under Executive Order 12065, information may be considered for classification only if it pertains, *inter alia,* to foreign government information, intelligence activities, sources, or methods, or foreign relations or foreign activities of the United States. If the information falls within one of these categories, it may be classified only if an original classification authority further determines that its unauthorized disclosure reasonably could be expected to cause at least identifiable damage to the national security. Exec.Order No. 12065, § 1–302.

■ In support of its contention that documents or portions thereof have been properly withheld pursuant to exemption 1, Defendant has submitted the joint declaration of FBI Special Agents Richard C. Staver and Walter Scheuplein, Jr. The guidelines for exercise of judicial discretion concerning FOIA requests and claims of the national security exemption under § 552(b)(1) are well settled. Congress has directed the courts to make a *de novo* review of the agency's classification decision with the burden on the agency to justify non-disclosure. *Ray v. Turner,* 587 F.2d 1187, 1191–94 (D.C.Cir.1978); 5 U.S.C. § 552(a)(4)(B) (1976). In conducting this *de novo* review, however, the courts have also been instructed to give "substantial weight" to the agency affidavits. *Weissman v. Central Intelligence Agency,* 565 F.2d 692, 697 n. 10 (D.C.Cir.1977); S.Rep. No. 1200, 93d Cong., 2d Sess. 12 (1974), U.S.Code Cong. & Admin.News 1974, pp. 6267, 6290. Summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than mere conclusory statements,

and if the affidavits are not called into question by contradictory evidence in the record or by evidence of agency bad faith. *Halperin v. Central Intelligence Agency,* 629 F.2d 144, 148 (D.C.Cir.1980). The affidavits must demonstrate (1) that the agency followed proper classification procedures, and (2) that by its description the documents logically fall within the claimed exemption. *Hayden v. National Security Agency, Central Security Service,* 608 F.2d 1381, 1387 (D.C.Cir.1979), *cert. denied,* 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980). The sufficiency of the affidavits is not undermined by a mere allegation of agency misrepresentation or bad faith, nor by past agency misrepresentation in other related cases. *Id.*

■ Although the Court is required to give substantial weight to agency affidavits, the FOIA itself provides for *in camera* inspections, 5 U.S.C. § 552(a)(4)(B), at the discretion of the Court. *In camera* proceedings are a last resort, however, particularly in national security situations. *Weissman v. Central Intelligence Agency,* 565 F.2d at 697; *Phillippi v. Central Intelligence Agency,* 546 F.2d 1009, 1013 (D.C. Cir.1976). "It is only where the record is vague or the agency claims too sweeping or suggestive of bad faith that a District Court should conduct an *in camera* examination to look for segregable non-exempt matter." *Weissman v. Central Intelligence Agency,* 565 F.2d at 698. Furthermore, as the Court noted in *Weissman,* "where it is clear from the record that an agency has not exempted whole documents merely because they contained some exempt material, it is unnecessary and often unwise for a court to undertake such an examination." *Id.*

The joint declaration of FBI Special Agents Richard Staver and Walter Scheuplein and the exhibits attached to such declaration assert that the records classified by the FBI in the instant action fall into three categories: foreign government information; intelligence activities, sources

and methods; and information concerning foreign relations or foreign activities of the United States. The Defendant has classified materials under the above three descriptions as "confidential," a designation that § 1–104 of Executive Order 12065 states "shall be applied to information, the unauthorized disclosure of which reasonably could be expected to cause identifiable damage to the national security." The Order defines "national security" as the "national defense and foreign relations of the United States." Exec.Order No. 12065, § 6–104.

Plaintiff in this action does not question Defendant's adherence to the technical procedures for classifying the documents at issue. The core of Plaintiff's argument with regard to Defendant's claims of exemption pursuant to 5 U.S.C. § 552(b)(1) is that Defendant's declaration has failed to show that the information at issue warrants classification "to the exclusion of a reasonable doubt." This very characterization of the issue, however, demonstrates a fundamental misunderstanding of the proper standard for judicial review and ignores § 1–104 of Executive Order 12065 which states that a designation of "confidential" shall be applied to information, the unauthorized disclosure of which reasonably could be expected to cause identifiable damage to the national security.

Plaintiff's suggestion that the Court should elevate its standard of review of the FBI's declaration to the criminal law standard of "beyond a reasonable doubt" and her pronouncement that it "seems unlikely" that certain information could pertain to prospective intelligence sources is in disregard of the precedent already established in this Circuit and the standards of judicial review. While Plaintiff, of course, is entitled to her surmises regarding the subtleties of relationships between foreign governments and the United States and their national security consequences, they are simply "insufficient to undermine the agency's presentation." *Gardels v. Cen-*

*tral Intelligence Agency,* 689 F.2d 1100, 1106 n. 5 (D.C.Cir.1982).

■ If the Court concludes that the agency statements meet the standard of specificity required to justify non-disclosure under exemption 1, the Court is not to conduct a detailed inquiry to decide whether it agrees with the agency's opinion because to do so would violate the principle of affording "substantial weight" to the expert opinion of the agency. *Halperin v. Central Intelligence Agency,* 629 F.2d at 148. Indeed, as the Court of Appeals stated in *Gardels:*

> The test is not whether the Court personally agrees in full with the [agency's] evaluation of the dangers, rather, the issue is whether on the whole record the [agency's] judgment objectively survives the test of reasonableness, good faith, specificity, and plausibility in this field ... in which the [agency] is expert....

*Gardels v. Central Intelligence Agency,* 689 F.2d at 1105. The Court has a limited standard of *de novo* review in that that agency only need show the plausibility of the alleged potential harm in a manner that is reasonably detailed. *Halperin v. Central Intelligence Agency,* 629 F.2d at 148.

■ Despite Plaintiff's objections and Plaintiff's personal opinions notwithstanding, the Court finds that the Defendant has clearly demonstrated that its review of the classified material was thorough, proper, and in compliance with the substantive and procedural requirements of Executive Order 12065. The declaration of Special Agent Staver is sufficient to justify non-disclosure pursuant to exemption 1 of the FOIA and the entry of summary judgment for Defendant with respect to this exemption. The declaration contains reasonable specificity of detail rather than mere conclusory statements. It demonstrates that the agency followed proper classification procedure and that by its description the documents logically fall within the claimed exemption. Furthermore, the affidavits

are not called into question by contradictory evidence in the record or by evidence of bad faith, thus, this is not an appropriate case for *in camera* inspection.

Rather than signifying a "misapprehension of applicable legal standards," as Plaintiff characterizes the declassification of material originally classified by the FBI, the declaration demonstrates that the decision as to which documents or information was to remain classified or be declassified involved a scrupulous examination of the materials. Plaintiff's argument that Defendant's declaration speaks only of "mere possibilities" with regard to national security consequences is without merit. In fact, courts have repeatedly held that the very certitude which Plaintiff seems to feel is lacking is actually unreasonable; in these matters, there is "necessarily a region for forecasts in which informed judgment as to potential future harm should be respected." *Gardels v. Central Intelligence Agency*, 689 F.2d at 1106. Plaintiff's criticism of Defendant's declaration for being cast in terms of speculation, ignores that courts must "take into account .... that any affidavit of threatened harm to national security will always be speculative to some extent...." *Halperin v. Central Intelligence Agency*, 629 F.2d at 149. To strip the agency of its prerogative to engage in any prediction whatsoever, and insist on the stringency of description advocated by Plaintiff would undercut the very "purpose of the national security exemptions ..." *Id.*

Finally, the Court acknowledges the point stressed by Plaintiff that all of the documents involved in this matter are twenty to thirty years old and that it is difficult to believe that release of the information could still possibly cause identifiable damage to the national security. However, given that the agency affidavit passes judicial muster, it is only appropriate that the Court defer to the expert agency's decision. *Halperin v. Central Intelligence Agency*, 629 F.2d at 148.

## EXEMPTION 7

### *Threshold Requirements*

Exemption 7 of the FOIA protects from disclosure "investigatory records compiled for law enforcement purposes but only to the extent" that one of the exemption's subparts applies. Defendant in this action has withheld a number of documents or portions thereof under the claims of exemptions 7(C) and 7(D). Plaintiff challenges initially Defendant's invocation of exemption 7 on the ground that Defendant has failed to establish that the information that it seeks to withhold comprises investigatory records compiled for law enforcement purposes.

 Documents in the possession of the FBI must satisfy the threshold language of exemption 7 of the FOIA, investigatory records compiled for law enforcement purposes, before any of the constituent parts of exemption 7 may be asserted as a basis for non-disclosure of agency records requested under the Act. *Abramson v. Federal Bureau of Investigation*, 658 F.2d 806, 811–12 (D.C.Cir.1980), *rev'd on other grounds, Federal Bureau of Investigation v. Abramson*, 456 U.S. 615, 102 S.Ct. 2054, 72 L.Ed.2d 376 (1982). A two part inquiry is required for judicial review of an invocation of exemption 7: (1) the requested document must be shown to have been an investigatory record compiled for law enforcement purpose; and (2) the agency must demonstrate that release of the material would have one of the six results specified in the Act. *Federal Bureau of Investigation v. Abramson*, 456 U.S. at 622, 102 S.Ct. at 2059. The test is whether the requested material reflects or results from investigative efforts into civil or criminal enforcement matters. *Id.* at n. 5.

In *Pratt v. Webster*, 673 F.2d 408 (D.C. Cir.1982), the United States Court of Appeals for the District of Columbia Circuit set forth the conditions necessary for a law enforcement agency to pass the exemption

7 threshold that the documents withheld are investigatory records compiled for law enforcement purposes. In that case, a former officer of the Black Panther Party sought information from FBI files that was generated as a result of a national security investigation into alleged activities by Pratt which could have involved violations of 18 U.S.C. §§ 2382–2385 (1976). Although the Court acknowledged that the FBI used investigatory methods which were not commendable and that at times were illegal, the Court held that the investigatory records in issue had been generated as a result of law enforcement purposes.

■ The Court in *Pratt* established a two prong test for determining whether the material sought to be withheld by a law enforcement agency under exemption 7 meets the threshold requirement that they be investigatory records compiled for law enforcement purposes: (1) the agency's investigatory activities that give rise to the documents sought must be related to the enforcement of federal laws or to the maintenance of national security; and (2) the nexus between the investigation and one of the agency's law enforcement duties must be based on information sufficient to support at least "a colorable claim" of its rationality. *Pratt v. Webster*, 673 F.2d at 420–21. In elaborating on this test the Court noted that to satisfy the first prong of this test, which the Court labeled as the nexus requirement, "the agency should be able to identify a particular individual or a particular incident as the object of its investigation and the connection between that individual or incident and a possible security risk or violation of federal law." *Id.* at 420. Once the nexus requirement has been met, the agency must then be able to show that it realistically had a legitimate concern that federal laws have been or may be violated or that national security may be breached. *Id.* at 421.

■ Plaintiff in this action contends that Defendant has not satisfied the second prong of the *Pratt* test and therefore, cannot invoke exemption 7 as a basis for withholding information under FOIA. She contends that Defendant's declaration does not even attempt to demonstrate a factual basis for believing that the investigation of Carol King had a law enforcement purpose. The Court finds that Plaintiff's position is without merit and that Defendant has met the threshold requirements for invoking exemption 7 as set forth in *Pratt*. The declaration establishes that the FBI file

> is an Internal Security investigative file compiled for law enforcement purposes pursuant to Title 18, U.S.C. Section 2383 (Rebellion or Insurrection), formerly codified as Title 18, U.S.C. Section 4 (1940 ed.), ...; Title 18 U.S.C. Section 2384 (Seditious Conspiracy), formerly codified ...; Title 18 U.S.C. Section 5 (1949 ed.) ...; Title 18 U.S.C. Section 2385 (Overthrow of the Government), formerly codified as Title 18 U.S.C. Sections 10, 11 and 13 (1940 ed.)....

Declaration of Staver/Scheuplein at 35. Given that the file was generated as a result of the government's belief that Carol King was involved in activities that might result in violations of three sections of the Criminal Code, the Court finds that Defendant has satisfied the first prong of the *Pratt* test. It has established that a particular individual, Carol King, was the object of an investigation because of possible violations of federal law. *Pratt v. Webster*, 673 F.2d at 420.

Similarly, the Court concludes that the government has met the second requirement of the *Pratt* test, namely, that it had a colorable claim upon which to base its investigation. As is manifest in many of the documents released to Plaintiff, and as has even been repeatedly acknowledged by Plaintiff in her pending papers, Carol King was in close association with individuals and organizations that were of investigative interest to the FBI at that time. The Court takes no position with regard to the

merits of this FBI investigation of many years ago and declines to pass opinion on the "McCarthy era" climate during which part of the FBI investigation occurred. Notwithstanding whatever conclusions may be rendered in hindsight, the tenor of the times in which this investigation was conducted conduced to a "colorable claim" of federal law violation. As the Court in *Pratt* admonished, "a court, therefore, should be hesitant to second-guess a law enforcement agency's decision to investigate if there is a plausible basis for its decision." *Pratt v. Webster,* 673 F.2d at 421.

### Exemption 7(C)

Title 5 of the United States Code, § 552(b)(7)(C), exempts from mandatory disclosure "investigatory records compiled for law enforcement purposes, but only to the extent that the release of such records would ... constitute an unwarranted invasion of personal privacy." The Court, already having determined that the materials constitute investigatory records compiled for law enforcement purposes, must determine next whether the release of such records would constitute an unwarranted invasion of privacy.

In this case, Defendant has invoked exemption 7(C) to withhold the following: identities of FBI personnel; identities of state or local law enforcement officials who provided investigatory information to the FBI; the identity of a single non-FBI federal employee, identities of third parties who provided information as a result of their employment position with institutional sources; identities of persons who are mentioned in FBI investigatory files, primarily wiretap transcripts or correspondence; and identities of third parties mentioned in FBI investigatory files who may or may not have been the subject of direct investigatory interest, including individuals alleged to have been involved in subversive or other illegal activities. Plaintiff opposes Defendant's invocation of exemption 7(C) with re-

spect to the following categories of individuals on the ground that no privacy interests would be threatened by release of information pertaining to them: third parties who are mentioned in the files, third parties who are subjects or suspects in an FBI investigative file, and third parties who provided information to law enforcement officials.

■ Exemption 7(C) was designed to protect the "privacy of any person mentioned in ... requested files and not only the person who was the object of the investigation." 120 Cong.Rec.S. 17033 (May 30, 1974). Where a privacy concern exists, disclosure is made only if the public's right to be informed is deemed to be of greater social importance. *Department of Air Force v. Rose,* 425 U.S. 352, 372–73, 96 S.Ct. 1592, 1604–05, 48 L.Ed.2d 11 (1976). The private, personal, or pecuniary interest of a requester is not enough. Where the requester fails to assert a public interest purpose for disclosure, even a less then substantial invasion of another's privacy is unwarranted. *Ditlow v. Shultz,* 517 F.2d 166, 170–71 (D.C.Cir.1975).

■ It is well settled in this Circuit that those who are mentioned in investigatory files are entitled to exemption 7(C) protection. *See, e.g., Iglesias v. Central Intelligence Agency,* 525 F.Supp. 547 (D.D.C. 1981). The same is true for those who were the subjects or suspects in an FBI investigative file. *See, e.g., Baez v. Department of Justice,* 647 F.2d 1328, 1338 (D.C.Cir.1980). Even more patent is the case for withholding the identities of third parties who provided information to law enforcement investigations. *Lesar v. United States Department of Justice,* 636 F.2d 472, 488 (D.C.Cir.1980). Given that these categories of persons are entitled to protection under 7(C), the Court must determine whether based on the facts of this case, the public's right to be informed outweighs the privacy of the individuals involved.

■ In this case, the individual making the request for this information is not con-

nected in any way with the materials in question. Plaintiff seeks the information to aid her in writing a book about Carol King, who is the subject of the request. The Court is mindful, however, that the individual making the request is not only interested in these documents to satisfy her own curiosity, but is likely to use some or all of the information contained in these documents in the book which is likely to be circulated to the public. The Court acknowledges, therefore, that there is some public interest, although very minimal. Given that it "is difficult, if not impossible, to anticipate all respects in which disclosure might damage reputations or lead to personal embarrassment and discomfort," *Lesar v. United States Department of Justice*, 636 F.2d at 488, however, the Court declines to find that the public interest in this case outweighs the privacy interests of those third parties identified in the FBI investigative files.

It is significant to note that the very abuses by the government and the "McCarthy era" character of this investigation, as alleged by Plaintiff, far from justifying release of this information, have been held the precise reasons for withholding information pertaining to third parties. In *Dunaway v. Webster*, 519 F.Supp. 1059 (N.D.Cal.1981), as in the instant case, "virtually all of the material either identified individuals who were of investigative interest to the FBI, or contains information linking those individuals to activities or organizations which at that time were considered subversive." *Id.* at 1077. The requester there, like Plaintiff in this action, was an author who intended to write a book, utilizing the requested documents, "which likely would be widely circulated." *Id.* at 1077–78. After noting the "embarrassment and damage to reputation" which would result from release of information pertaining to individuals in connection with individuals or organizations "which have been considered subversive," *Id.* at 1078–79, the Court quoted with approval from *Cerveny v. Central Intelligence Agency*, 445 F.Supp. 772, 776 (D.Colo.1978):

"A moment's reflection upon recent political history and the excesses of the internal security investigations of the 1950's should be sufficient to signal caution in dealing with unverified derogatory material within the files of an intelligence gathering agency of government. Indiscriminate public disclosure of such material in response to a citizen's request would be as much an abuse of agency authority as an intentional release designed to damage persons. The impact on the individual is the same."

*Id.* at 1079. Plaintiff's claim of public interest sufficient to overcome the substantial privacy interest of the third parties contained in the FBI investigative files in this case is of no greater avail than that in *Dunaway* and the Court finds that the balance tips in favor of non-disclosure of the identities of third parties contained in the FBI investigative files.

Finally, the Court rejects Plaintiff's argument that the passage of time favors release of the identities of the third parties contained in the FBI files in this action. Such an argument was squarely rejected in *Dunaway*. There the Court found that the changing "mood of the country" and the fact that the public perception of the investigations of persons, as in the instant case, once thought to have engaged in subversive activities is subject to "great swing which occur with little warning ..." supported the continued withholding of such third party information. *Dunaway v. Webster*, 519 F.Supp. at 1079.

### EXEMPTION 7(D)

Section 552(b)(7)(D) exempts from disclosure investigatory records compiled for law enforcement purposes, the production of which would disclose the identity of a confidential source and confidential information furnished by that source. In this case, the FBI has invoked exemption 7(D) to withhold source symbol numbers and letters; information provided to the FBI under express or implied assurances of confidential-

**296**

ity and the identities of the persons who provided the information; the identities of, and information provided to the FBI by financial or commercial institutions; and the identities of, and information provided to the FBI by local law enforcement agencies. Additionally, the FBI referred two one-page documents to the INS for review and response to the requestor. Such documents are contained in the investigatory file pertaining to Carol King and pertain to the identification of Communist Party members by a single source. These documents were reviewed by INS and released to Plaintiff, except for the name of the single informant which was withheld pursuant to exemption 7(D) because of an alleged implied assurance of confidentiality made to the informant at the time the information was supplied to INS. Plaintiff objects to the invocation of exemption 7(D) by the FBI and the INS only with respect to information provided under express or implied assurances of confidentiality and the identities of persons who provided such information.

Exemption 7(D) is properly invoked whether the confidential source provided information under an express assurance of confidentiality or under circumstances from which such an assurance could be reasonably inferred. *Strauss v. Internal Revenue Service*, 516 F.Supp. 1218, 1222 (D.D.C.1981). The Court has reviewed painstakingly each of the documents submitted with this motion. Defendant has excised from many documents the names of individuals who were interviewed during the internal security investigation at issue. In addition, information given by the source was also excised in some instances if the information given could have identified the source. Many documents were noted with the words "confidential informant" at the time that the document was originally composed. This is a clear indication that such informants were given express assurances of confidentiality and therefore, exemption 7(D) is properly invoked with respect to such documents.

Defendant also contend that other interviewees, although they were not given express assurances of confidentiality, were given implied assurances of confidentiality. Defendant alleges this with respect to the INS document. Given the tenor of the times when this investigation was conducted, and especially since many of the informants were in close association with Ms. King and organizations which were of interest to the FBI, it is more likely than not that such interviewees provided such information with the expectation that their identity and the information provided would remain confidential. This would seem to be a circumstance from which the implied assurance of confidentiality could reasonably be inferred. *Strauss v. Internal Revenue Service*, 516 F.Supp. at 1222. The content of the information, as well as the circumstances under which an investigation was conducted suggest that the sources of information "would hardly have made the charges unless they were confident that their identities would remain concealed." *Nix v. United States*, 572 F.2d 998, 1003 (4th Cir.1978).