724 F.Supp. 985 (1989)
DOW JONES & COMPANY, INC., Plaintiff,
v.
UNITED STATES DEPARTMENT OF JUSTICE, Defendant.
Civ. A. No. 88-3182.
United States District Court, District of Columbia.
July 10, 1989.
Paul Blankenstein, Gibson, Dunn & Crutcher, Washington, D.C., for plaintiff.
Nathan Dodell, Asst. U.S. Atty., U.S. Attys. Office, Washington, D.C., for defendant.

MEMORANDUM
AUBREY E. ROBINSON, Jr., Chief Judge.
This is a Freedom of Information Act[1] ("FOIA" or "the Act") case seeking disclosure *986 of the letter sent by the United States Department of Justice ("DOJ") to the Chairman of the House of Representatives' Committee on Standards of Official Conduct ("House Ethics Committee") detailing its investigation of Mr. St Germain, who at the time the letter was written was a member of Congress. DOJ has raised exemptions 5 (work product and deliberative process privilege), 7(C), and 7(D) as proper grounds for withholding disclosure.[2] Currently pending are DOJ's motion for summary judgment and plaintiff's cross-motion for summary judgment. Because the Court concludes that the deliberative process privilege applies, the Court shall grant DOJ's motion and deny plaintiff's cross-motion.

BACKGROUND:
DOJ conducted a grand jury investigation of St Germain; at issue was his receipt of free meals. After concluding that the relevant statute and the high burden of proof in a criminal trial made the likelihood of conviction unlikely, DOJ declined to prosecute. However, it sent a letter to the House Ethics Committee summarizing its investigation, to enable the House Ethics Committee to determine whether House rules had been violated and whether disciplinary action was warranted. The DOJ letter (hereafter the referral letter) noted that the investigation had uncovered "substantial evidence of serious and sustained misconduct by Representative St Germain"; gave its reasons for not prosecuting; informed the committee that evidence had been presented to a grand jury and that DOJ would support any House Ethics Committee effort to obtain the required court order for disclosing the grand jury materials; and described the evidence it had obtained in the course of interviews.
When the House Ethics Committee moved for disclosure of the grand jury materials, the Washington Post and Public Citizen, a public interest law firm, learned of the motion. They moved for disclosure of the file, which included the referral letter ("grand jury disclosure matter"). The Court unsealed the file except for a portion of the referral letter. After balancing the privacy interests of St Germain and persons named in the letter with the public interest in open court records, the Court concluded that the general contours and conclusion of the investigation should be disclosed but the details should remain sealed. A redacted version of the referral letter was ordered to be placed on the public record.
In the meantime, the Washington Post, through its parent corporation Dow Jones, Inc., had been pursuing a FOIA request to DOJ for disclosure of the referral letter. The FOIA request was denied, and shortly before the Court's order in the grand jury disclosure matter, Dow Jones, Inc. ("Plaintiff"), commenced this action. The action was originally assigned to Judge Richey, but then reassigned to this Court as related to the grand jury disclosure matter. A briefing schedule was agreed to and approved; and the motion and cross-motion for summary judgment have been fully briefed.

DISCUSSION:
Under FOIA the government bears the burden of justifying non-disclosure; disclosure is presumed appropriate unless the government establishes that one of the exemptions apply. DOJ has cited three statutory exemptions, 5, 7(C) and 7(D), 5 U.S.C. § 552(b)(5), 7(C) & 7(D), for its contention that four grounds for non-disclosure support its denial of the FOIA request. The Court will discuss them seriatim.

Exemption 5:
This exemption applies to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Generally speaking, this covers documents which normally would not be discoverable in litigation with the agency. NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 95 *987 S.Ct. 1504, 44 L.Ed.2d 29 (1975). The two discovery-related privileges which DOJ invokes are the work-product privilege and deliberative process privilege.

A) Deliberative Process Privilege:

This privilege protects the "decision making processes of government agencies." Sears, 421 U.S. at 150, 95 S.Ct. at 1516. It is limited to materials that are predecisional and deliberative. Id. at 151-52, 95 S.Ct. at 1516-17. A document explaining a decision already made is not protected. Id.
Plaintiff contends that the referral letter cannot be either predecisional or deliberative because it was written after DOJ had decided not to prosecute. Thus it does not reflect anything about its decisionmaking process; at best, it merely explains DOJ's decision not to prosecute. According to Plaintiff, that the letter may be deliberative-process material of the House Ethics Committee is irrelevant, because FOIA does not apply to Congress and DOJ had no legal obligation to refer the matter to the Committee.
DOJ counters that inter-branch cooperation should be treated the same as inter-agency; that because the referral letter would be covered by the privilege had it been transmitted to another executive agency with jurisdiction to consider the matter, it should be covered here. There is no reason, DOJ contends, to presume that Congress would deny itself the benefits of the deliberative process privilege, which encourages the flow of information to policymakers.
Two cases in this circuit, without much analysis, have applied exemption 5 to materials transmitted to Congress. Demetracopoulos v. CIA, 3 GDS ¶ 82,508 at 83,283 (D.D.C.1982) (Parker, J.) (material properly withheld because of candid exchanges of information to and from Congress), reprinted in Plaintiff's Cross-Motion for Summary Judgment as Exhibit 6; Letelier v. DOJ, 3 GDS ¶ 82,257 at 82,714 (D.D.C. 1982) (Flannery, J.) (materials prepared for congressional committee by CIA, at committee's request, protected by exemption 5 because "such consultations are an integral part of the deliberative process and to discuss this process in public view would inhibit frank discussions of policy matters and likely impair the quality of decisions."), reprinted in Plaintiff's Cross-Motion for Summary Judgment as Exhibit 7.
The Court will follow Demetracopoulos and Letelier, and construes exemption 5 to encompass inter-branch memoranda of the type at issue in this case. Plaintiff's attempt to distinguish the cases is not persuasive.[3] Similarly, plaintiff's argument that mere transmittal of the letter cannot render it an "inter-agency" document ignores the context in which the referral letter was produced. This is not simply a case of DOJ transmitting non-privileged material to the Committee, as might be the case had DOJ transmitted an intra-agency memorandum explaining the decision not to prosecute. The letter would not have been created but for the planned referral. It *988 thus is the type of information that without question (but for its inter-branch nature) would be covered by exemption 5 in that it is advice from one governmental employee to another regarding a matter within the receiver's decision-making authority. If the exemption does not apply, it is arguable, at least, that Congress' deliberative process will suffer the harm the exemption is intended to prevent; the free flow of information to policy makers may suffer because the executive branch may be reluctant to provide candid information to Congress.
Without question, the plain language of FOIA does not define Congress or congressional committees as "agencies"; therefore, a strict reading would lead to the conclusion that the referral letter is not an "inter-agency memorandum or letter." Similarly, there is little question that the letter was not part of DOJ's deliberative process. But a strict reading need not be applied if to do so would frustrate the purposes of an exemption. See Ryan v. United States Department of Justice, 617 F.2d 781, 790 (D.C.Cir.1980) (Congress apparently did not intend "inter-agency" and "intra-agency" to be rigidly exclusive terms; documents submitted by Congress in response to Agency questionnaire intra-agency memoranda); cf. FBI v. Abramson, 456 U.S. 615, 102 S.Ct. 2054, 72 L.Ed.2d 376 (1982) (summary of investigative records, prepared for non-investigative purpose, covered by investigative records exemption because disclosure of information implicates same concerns motivating enactment of investigative records exemption). On the other hand, applying exemption 5 to the referral letter would be fully consistent with its goal, if one of the Act's purposes is viewed as insuring the deliberative process of government generally as opposed to the deliberative process of executive agencies specifically.
Despite the absence of explicit textual support in FOIA for this reading, the case law, legistative history, and structure of the Act support this broader construction. The cases and legislative history both speak of protecting the deliberative process of "government." See Wolfe v. Department of Health and Human Services, 839 F.2d 768, 773-74 (D.C.Cir.1988) (en banc). Moreover FOIA was structured to protect the deliberative process of Congress, as shown by Congress' decision to exempt itself from the Act.[4] Exemption 5 does for agencies what the Act as a whole does for Congress. The exemption should be harmonized with the Act's purposes as a wholeto provide as much information as is consistent with "efficient Government operation." Wolfe, 839 F.2d at 773-74 (quoting S.Rep. No. 813, 89th Cong., 1st Sess. 9 (1965)) (emphasis added). There is little reason to construe it in a way that directly conflicts with both the exemption's and Act's purpose of protecting the deliberative process of government.[5]
Finding Exemption 5 applicable does not end the inquiry, however. Factual material still is disclosable unless to do so would reveal the deliberative process or the facts are "inextricably intertwined" with the policy-making process. Ryan, 617 F.2d at 790. The non-disclosed portions of the letter are "inextricably intertwined" with the policy-making process.
*989 The non-disclosed portions of the letter summarize the evidence of St Germain's alleged misconduct. The evidence against a person is "inextricably intertwined" with the decision whether to file ethics charges. Thus it is not severable factual material. Compare Ryan, 617 F.2d at 791 (answers to questions such as how many persons Senators considered as possible nominees for judgeships and what was the make-up of any commission used to evaluate potential nominees clearly disclosable factual material; questions regarding the background of persons considered might be exempt).
In sum, Exemption 5 applies and the material is not severable, and therefore DOJ properly withheld the letter.

B) Work Product Privilege:

This privilege protects material prepared by attorneys in contemplation of litigation.
Plaintiff argues, much as it did with respect to the deliberative process privilege, that the privilege cannot apply because the referral letter was prepared after DOJ had decided not to prosecute; thus it was not prepared in contemplation of litigation.
DOJ counters that the work-product privilege should apply because it recites facts, and opinions about those facts, that the attorneys developed during the course of investigation. It sidesteps the "contemplation of litigation" requirement by arguing that the work-product privilege survives the end of the litigation. It further argues that the "purposes of the [FOIA] exemptions do not disappear when the information is incorporated in a new document or otherwise put to a different use." Defendant's Response to Plaintiff's Cross-Motion for Summary Judgment and Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment, at 9-10 (quoting FBI v. Abramson, 456 U.S. 615, 629 n. 12, 102 S.Ct. 2054, 2063 n. 12, 72 L.Ed.2d 376 (1982)). DOJ's arguments are without merit.
That the work product privilege survives the end of litigation is irrelevant, because it only survives if it applied in the first instance. If the privilege never attached, it cannot survive. If the document was not prepared in contemplation of litigation, the work-product privilege never attached. DOJ virtually admits that the document was not prepared in contemplation of litigation.[6] Therefore its argument that the privilege survives the completion of litigation is meaningless.
This analysis also takes care of DOJ's attempt to extend Abramson. The purposes of an exemption may not disappear when the information is re-stated, but the exemption must be satisfied before the exemption's purposes appear; the exemption was not satisfied, because an essential requirement was not present, therefore there is no purpose to disappear. Moreover, there is no indication that Abramson, which involved the law enforcement privileges of exemption 7, will be extended to cover non-privileged restatements of material covered by an exemption other than exemption 7.

Exemption 7(C):
This exemption covers "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In applying this exemption, the court must balance the privacy interests of affected individuals with the public interest in disclosure. The privacy interests at stake are those of St Germain and the witnesses listed in the referral letter.
*990 Generally speaking, DOJ contends that the balancing act done in the grand jury disclosure matter was equivalent to what needs to be done under exemption 7(C). Therefore no further disclosure is warranted. Plaintiff counters that the different source for the right to disclosure (FOIA as compared to common law right of access to open judicial records), the prior disclosures in the grand jury matter, and the existence of a federal statute requiring disclosure of free meals accepted by Congressmen,[7] which statute was not brought to the attention of the court in the grand jury disclosure matter, mandates further disclosures. Plaintiff's first two arguments are without merit; its third, however, would compel further disclosure.[8]

A) The Privacy Interests of St Germain:

Because court records are presumed open, and first amendment rights are implicated, the different source of the right to disclosure does little if anything to advance the inquiry. The task is the same  to balance the privacy interests in disclosure against the public interests in disclosure. It is doubtful that the public has a greater interest in open agency records compared to its interest in open court records.
Contrary to plaintiff's assertion, the prior disclosures ordered in the grand jury disclosure matter, which revealed that St Germain was the subject of a criminal investigation and the general contours of the investigation, do not totally destroy St Germain's privacy interests. Further disclosures would likely renew interest in the matter, with a corresponding invasion of privacy. See Bast v. Department of Justice, 665 F.2d 1251, 1255 (D.C.Cir.1981) ("[R]enewed publicity brings with it a renewed invasion of privacy. The renewed intrusion is subject, in its own right, to FOIA protection."). St Germain would likely now have to respond to the specific evidence against him, as set forth in the referral letter. Thus St Germain still has a privacy interest, subject to the effect of the federal statute requiring disclosure of acceptance of free meals, which must be balanced against the public interests in disclosure.
The public interest in disclosure, however, was arguably satisfied by the prior disclosures. The prior disclosures revealed the substance of the alleged wrongdoing and the government's reasons why the criminal justice system was inadequate to redress it. Again subject to the effect of the federal statute requiring disclosure of acceptance of free meals, it is arguable that plaintiff has not established the public interest in disclosure of the details of the investigation, in light of the disclosure as to the general contours of the investigation. Cf. King v. United States Department of Justice, 830 F.2d 210, 234 (D.C.Cir. 1987) (party seeking to invade a person's privacy interests under exemption 7(C) must "support `adequately ... [its] "public interest" claim with respect to the specific information being withheld.'") (quoting Senate of the Commonwealth of Puerto Rico v. United States Dep't of Justice, 823 F.2d 574, 588 (D.C.Cir.1987)) (emphasis in original).
The federal statute requiring disclosure of acceptance of free meals, 2 U.S.C. § 702(a),[9] tips the balance in favor of disclosure. *991 The district courts in this circuit have often held that disclosure statutes such as this strips away whatever privacy interest the public official may have with respect to the subject matter required to be reported; significantly, the executive branch usually acquieces in these holdings.[10]See Common Cause v. National Archives & Records Service, 628 F.2d 179, 184-85 (D.C.Cir.1980) (citing Congressional News Syndicate v. United States Department of Justice, 438 F.Supp. 538, 543 (D.D.C.1977), a case never appealed by the government, and Fund for Constitutional Government v. National Archives & Records Service, 485 F.Supp. 1 (D.D.C. 1978) (ordering release in accord with Congressional News), affirmed in part, reversed in part, 656 F.2d 856 (D.C.Cir. 1981)); see also Fund for Constitutional Government, 656 F.2d at 865 n. 21 (noting that the district court ordered release of material of the same character as that in Congressional News Syndicate, which part of the order was not at issue in the appeal).
The statute requires the reports to be in detail, and the reports are available to public inspection. See note 9 supra. Thus the statute makes the details a matter of public interest. And it is hard to see what privacy interests St Germain has in material of the type that should be filed and made available to the public, particularly in light of the prior disclosure. Therefore, the public interest in further disclosure would outweigh the privacy interests of St Germain.

B) The Privacy Interests of the Third Parties:

The third parties involved in this case are the sources of information for the letter and the owner of the restaurant where the meals were eaten.
Plaintiff does not really argue that it is entitled to disclosure of the identity of the third parties. But it notes that their interests can be protected by redactions. DOJ claims that redactions are insufficient, but does not explain why. If disclosure were otherwise appropriate, the Court would agree that redactions could protect the privacy interests of the third parties.

Exemption 7(D):
This exemption protects "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to disclose the identity of a confidential source ... and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation ..., information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D).
There is no doubt that the letter contains "information compiled for law enforcement purposes"; therefore the threshold test for the applicability of exemption 7 is satisfied. Likewise, there is no doubt that the information was "compiled by law enforcement authority in the course of a criminal investigation." The only dispute is whether DOJ has established that the information was "furnished by a confidential source." If it has, the information is not subject to disclosure, regardless of whether disclosure would reveal the identity of the source.
To establish that these sources understood that the information they provided *992 would remain confidential[11], DOJ provides two affidavits. One, from another case, describes the need for confidentiality generally, the types of circumstances requiring confidentiality, the problems for law enforcement if confidentiality was not assured, that confidentiality is the general rule, etc. The second affidavit is from the agent who conducted the interviews that formed the basis of the letter. He agrees with the first affidavit's conclusions that the "circumstances of interviews create an atmosphere in which a promise of confidentiality is understood"; and "that was true in this investigation." Bird Affidavit at 2.
Plaintiff contends that the affidavits do not sufficiently establish the circumstances of the interviews to allow the Court to conclude that the sources were "confidential"; the affidavits do not elaborate on the allegation that the "personal association" between the witnesses and St Germain indicate circumstances giving rise to an implied promise of confidentiality.
After reviewing the letter in camera,[12] the Court agrees that the primary witness and the primary witness' associate can be considered "confidential" sources. Each of these persons had an "apparent conflict in allegiance present[ing] `a circumstance from which the implied assurance of confidentiality could reasonably be inferred.'" King v. DOJ, 830 F.2d 210, 235 (D.C.Cir. 1987) (quoting district court opinion, 586 F.Supp. 286, 296 (D.D.C.1983)).
The Court cannot say the same for other sources. Nothing, other than the general and conclusory affidavits, about the other sources or the circumstances in which they were interviewed provides a basis for inferring confidentiality. They have no known personal association with St Germain. Unless the Court were to hold that every interview contains an implied promise of confidentiality, which it refuses to do, DOJ has failed to show that these witnesses provided "confidential information." Thus, if disclosure were otherwise appropriate, while the information given by the primary witnesses would be protected, the information given by the other witnesses would not be covered by the exemption.

CONCLUSION:
Exemption 5 applies, because the Court construes it along with the structure of the Act to protect the deliberative process of the government and not just of executive agencies. None of the material is severable, and DOJ properly withheld the letter.
The work-product privilege does not apply because the referral letter was not prepared in contemplation of litigation.
Applying exemption 7(C) would require further disclosure, subject to redactions to protect the privacy of other individuals named in the letter; St Germain's privacy interest does not, by itself, require redactions.
Applying exemption 7(D) would require redactions of information given by the primary witnesses; but DOJ has not sustained its burden of showing that the other witnesses were given assurances of confidentiality.
An appropriate Order accompanies this Memorandum.

ORDER
In accordance with the Memorandum entered this date, it is by the Court this 10th day of July, 1989,
ORDERED, that Defendant's Motion for Summary Judgment is GRANTED; and it is
FURTHER ORDERED, that Plaintiff's cross-motion for summary judgment is DENIED; and it is
*993 FURTHER ORDERED, that Plaintiff's complaint is DISMISSED WITH PREJUDICE.
NOTES
[1] 5 U.S.C. § 552 et. seq.
[2] See 5 U.S.C. § 552(b)(5), 7(C) & 7(D).
[3] Plaintiff states that in Demetracopoulos the Court found the material to be part of the agency's deliberative process. Plaintiff's Reply Memorandum at 18. But that finding does not appear to be explicit; indeed, the opinion speaks broadly of encouraging governmental employees to give candid advice to assist other governmental officials in arriving at their decisions. Similarly, the opinion speaks of exchanges of information "to and from Congress." Therefore Plaintiff's statement that the Court found the material to be part of the "agency's" deliberative process, and not protected merely because it was part of the "government's" deliberative process, finds scant support in the opinion.

Plaintiff dismisses the Exemption 5 holding in Letelier as an alternative holding distinguishable on the grounds that the congressional committee involved in that case might later become involved in a deliberative process of the Executive branch, because the committee had oversight responsibilities as to the CIA, the producer of the documents; in contrast, the House Ethics Committee has no oversight responsibilities with respect to DOJ and is solely responsible for disciplining Members of Congress for ethical violations.
Whether the congressional committee involved has oversight responsibilities as to the agency that produces the record is irrelevant. The receiver's authority over the provider of the information is not determinative, as the applicability of the exemption to inter-agency memoranda does not depend on whether the two agencies share jurisdiction over the matter covered by the memorandum.
[4] That the Act does not apply to Congress does not compel the conclusion, as plaintiff argues, that therefore the exemptions cannot apply to Congress. Because exemptions are matters to which the Act "does not apply[,]" 5 U.S.C. § 552(b), and congressional materials likewise are matters to which the Act does not apply, the more plausible construction is that all exemptions apply to Congress.
[5] It is also worth noting that, given the context in which the document was created, construing exemption 5 to cover it does not frustrate the Act's primary purpose of preventing government by "secret" law. In the first place, it is worth noting that the executive branch's decision not to prosecute is virtually unreviewable. And to the extent the reasons for not prosecuting are put in writing in a discoverable document presumably a very rare occurrence  in this case they were put in writing solely for the purpose of giving guidance to the House Ethics Committee. The "law" by which inter-branch referrals are made was hardly the focus of FOIA; such referrals rarely, if ever, by themselves determine individual rights and liabilities.
[6] Interestingly, if DOJ had carried its inter-branch argument further, it would have had a stronger argument; i.e., if it argued that the letter was prepared in contemplation of disciplinary proceedings before Congress, this essential requirement would arguably be met. But this argument would be problematic, because there is no showing that the House Ethics Committee and DOJ consider themselves as "co-counsel"; similarly there is nothing in the record as to what were the prospects of ethics litigation before Congress when the letter was prepared. Since the argument was not made, and certainly was not factually supported, it would be inappropriate for the Court to extend and apply the inter-branch argument on DOJ's behalf.
[7] See 2 U.S.C. § 702(a).
[8] Obviously the further disclosure that would be appropriate under exemption 7(C) will not be forthcoming because of the Court's ruling on exemption 5. Given the lack of explicit controlling authority on the exemption 5 issue, the Court deems it advisable to discuss all exemptions, so that if the Order is appealed the court of appeals will have the Court's analysis of all exemptions and will not need to remand, should the court of appeals hold that exemption 5 is not applicable.
[9] This statute provides that each Member of Congress must file a "full and complete statement" with respect to:

(1)(A) The source, type, and amount or value of income ... from any source (other than from current employment by the United States Government) ... aggregating $100 or more in value.
. . . . .
(2)(A) The identity of the source and a brief description of any gifts of transportation, lodging, food, or entertainment aggregating $250 or more in value received from any source other than a relative of the reporting individual during the preceding calendar year, except that any [of the above] received as personal hospitality of any individual need not be reported, and any gift with a fair market value of $35 or less need not be aggregated for purposes of this subparagraph.
2 U.S.C. § 702(a). These reports, if filed, are available for public inspection. Id. § 704.
Needless to say, the analysis that follows is not intended to express an opinion as to whether St Germain was required to file the reports; no inference as to whether or not the meals were received as personal hospitality or had a fair market value of over $35 should be drawn. The analysis only goes to the subject matter of the material in general terms; disclosure of receipt of free meals would not constitute an unwarranted invasion of privacy.
[10] Obviously the Court does not suggest that DOJ is estopped from now contesting application of these holdings.
[11] An express promise of confidentiality is not required. An implicit understanding, arising from the circumstances of the interview, can be sufficient.
[12] DOJ had offered to submit the referral letter for in camera review. Plaintiff stated it had no objection to such review, but contended that DOJ had not made the showing that would justify such expenditure of this Court's time. The Court already had a copy of the referral letter as a result of the grand jury disclosure matter. So the Court availed itself of the opportunity to review the referral letter.