**DOW JONES & COMPANY, INC., Appellant,**

v.

**DEPARTMENT OF JUSTICE.**

No. 89–5353.

United States Court of Appeals, District of Columbia Circuit.

Argued April 30, 1990.

Decided July 24, 1990.

John F. Manning, of the bar of the Supreme Court of the Com. of Pa., pro hac vice, by special leave of the Court, with whom Larry L. Simms, Washington, D.C., was on the brief, for appellant. Paul Blankenstein, Washington, D.C., also entered an appearance, for appellant.

Nathan Dodell, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before EDWARDS, SILBERMAN and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

Concurring Opinion filed by Circuit Judge HARRY T. EDWARDS.

SILBERMAN, Circuit Judge:

Dow Jones & Company, Inc. appeals from the judgment of the district court denying it access under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to redacted portions of a letter sent by the Justice Department to the House Committee on Standards of Official Conduct (the "House Ethics Committee"). The letter summarized the results of a Justice Department probe into possible criminal wrongdoing by Fernand J. St Germain, who at the time was a member of Congress and Chairman of the House Committee on Banking, Finance, and Urban Affairs. The Department had declined to pursue an indictment, but it decided to inform the House Ethics Committee about the information it had collected. Because we conclude that the redacted information was obtained from confidential sources in the course of a criminal investigation, we affirm the district court's judgment that the entire redacted portion of the letter is exempt from disclosure under FOIA.

I.

On May 31, 1988, John C. Keeney, the Acting Assistant Attorney General of the Criminal Division of the Justice Department, sent a letter to Representative Julian C. Dixon, Chairman of the House Ethics Committee. The letter revealed that the Justice Department had been conducting a grand jury investigation into whether Representative St Germain's receipt of free meals and entertainment was in violation of any criminal laws. The Department explained that "because certain technical requirements of the relevant statutes make it uncertain that [the Department] would be able to meet the standard of proof of guilt beyond a reasonable doubt," it had declined to prosecute. But the Department also stated in the letter that the investigation had uncovered "substantial evidence of serious and sustained misconduct by Representative St Germain," and the Department explained that it was therefore referring the matter to the Ethics Committee to determine whether any House standards of

conduct had been violated. Crucially for this case, the letter outlined some of the information the Department had obtained in interviews conducted in the course of the investigation.

On July 28, 1988, Dow Jones requested a copy of the letter under FOIA. Approximately one month later, the Justice Department, relying on the privacy-based exemptions under the statute, declined to release the letter. In November, Dow Jones filed suit in the district court to compel disclosure.[1]

The district court granted the Department's motion for summary judgment, sustaining the Department's denial of the FOIA request. *See Dow Jones & Co., Inc. v. Department of Justice,* 724 F.Supp. 985 (D.D.C.1989). The court held that the Department could properly withhold the redacted portion under Exemption 5 of FOIA, 5 U.S.C. § 552(b)(5), which excludes from disclosure certain "inter-agency" and "intra-agency" documents that reflect an agency's deliberative process. *See id.* at 989. That interpretation of Exemption 5 would bar completely disclosure of the redacted portion of the letter; nevertheless, as a prudential matter, the court went on to consider the applicability of other FOIA exemptions asserted by the government.

The district court decided that Exemption 7(C), 5 U.S.C. § 552(b)(7)(C), which excludes documents the production of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy," permitted the withholding of the names of the witnesses but not the substance of the interviews. *See* 724 F.Supp. at 991. And the court concluded that Exemption 7(D), 5 U.S.C. § 552(b)(7)(D), which protects information obtained from confidential sources in the course of a criminal investigation, would shield only the identities of and information provided by the Department's "primary witness and the primary witness' associate." 724 F.Supp. at 992. The Department, according to the court, did not establish that the other witnesses were "confidential sources," and therefore the redacted parts of the letter discussing information provided by these nonconfidential sources would have had to have been released if the Department had relied only on Exemption 7(D). *See id.*

Dow Jones challenges all of the district court's determinations. The Department, however, has chosen to defend the court's

judgment only on Exemption 5 and 7(D) grounds—it has dropped the Exemption 7(C) claim.

## II.

■ Under FOIA, "virtually every document generated by an agency is available to the public in one form or another, unless it falls within one of the Act's nine exemptions." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 136, 95 S.Ct. 1504, 1509, 44 L.Ed.2d 29 (1975). Exemption 5 of the statute permits an agency to refuse to disclose to the public "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Since litigants can obtain virtually any unprivileged document, "[c]ourts have construed this exemption to encompass the protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context, including materials which would be protected under the attorney-client privilege, the attorney work-product privilege, or the executive deliberative process privilege." *Formaldehyde Institute v. Department of Health and Human Servs.,* 889 F.2d 1118, 1121 (D.C.Cir. 1989) (internal quotation marks and citations omitted); *see also United States v. Weber Aircraft Corp.,* 465 U.S. 792, 799, 104 S.Ct. 1488, 1492, 79 L.Ed.2d 814 (1984) (stating that "Exemption 5 simply incorporates civil discovery privileges").

The Justice Department here relies on the common law "deliberative process" or "executive" privilege as one of the privileges incorporated into Exemption 5. This ancient privilege is predicated on the recognition "that the quality of administrative decision-making would be seriously undermined if agencies were forced to operate in a fishbowl." *Wolfe v. Department of Health and Human Servs.,* 839 F.2d 768, 773 (D.C.Cir.1988) (*en banc*). We have said that "the purpose of Exemption 5 is to encourage the 'frank discussion of legal and policy issues.'" *Id.* (quoting S.REP. No. 813, 89th Cong., 1st Sess. 9 (1965)). But—and this is the government's problem—in order to qualify for the deliberative process privilege under Exemption 5, the government must demonstrate that the document is either inter-agency or intra-agency in nature, and also that it is both predecisional and part of the agency's deli-

---

**1.** Dow Jones had previously obtained the letter in redacted form because the *Washington Post,* in a separate proceeding, successfully obtained

portions of the letter from the grand jury materials.

berative process. *See id.* at 774; *see also Formaldehyde Institute,* 889 F.2d at 1121.

■ The Department argues that the district court correctly decided that Exemption 5 covers materials sent from an Executive Branch agency to *Congress.* In other words, the government reads the word "inter-agency" to include inter-branch communications. The district court conceded that the government's interpretation does not comport with a "strict reading" of the language, but it thought a strict reading would frustrate the purpose of the statute. *See* 724 F.Supp. at 988. That is so, argues the government, because Congress exempted itself from FOIA, thereby protecting all of its internal deliberations. Therefore, it could not have intended that Executive Branch communications to Congress for the purpose of Congress' own internal deliberations be disclosable under FOIA.

It is an appealing argument. It may well be true that if Congress had thought about this question, the Exemption would have been drafted more broadly to include Executive Branch communications to Congress, such as the letter sought here. But Congress did not, and the words simply will not stretch to cover this situation, because Congress is simply not an agency.

Section 552(f) defines "agency" as follows:

> For purposes of this section, the term "agency" as defined in section 551(1) of this title includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency.

5 U.S.C. § 552(f). Section 551(1), in turn, defines "agency" for purposes of FOIA as "each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but *does not include ... the Congress ...* [or] the courts of the United States." 5 U.S.C. § 551(1) (emphasis added). Accordingly, we have previously recognized that members of Congress are not within the definition of agency under FOIA. *See Formaldehyde Institute,* 889 F.2d at 1122. The argument from anomaly that the government makes and the district court accepted is just not adequate to sidestep this statutory language. *See Weber Aircraft,* 465 U.S. at 802, 104 S.Ct. at 1494 (noting that "compelling evidence of congressional in-

tent ... would be necessary to persuade us to look beyond the plain statutory language [of Exemption 5]"); *see also Hallstrom v. Tillamook County,* — U.S. —, 110 S.Ct. 304, 310, 107 L.Ed.2d 237 (1989) (stating that " 'absent a clearly expressed legislative intention to the contrary,' the words of the statute are conclusive") (quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)).

■ To be sure, we did say in *Ryan v. Department of Justice,* 617 F.2d 781 (D.C. Cir.1980), that "Congress apparently did not intend 'inter-agency' and 'intra-agency' to be rigidly exclusive terms." *Id.* at 790. The government relies on *Ryan,* as did the district court. In *Ryan,* we held that questionnaires sent by the Justice Department to every Senator were *intra*-agency documents protected by Exemption 5 despite the fact that the materials physically left the Department (they were later returned by the Senators). The Department, in evaluating its own efforts to recommend more women and minorities to the federal bench, sought information from each Senator on how he or she selected potential nominees. We noted that in the course of internal deliberations an agency "often needs to rely on the opinions and recommendations of temporary consultants, as well as its own employees." *Id.* at 789. "Such consultations are an integral part of *its* [the agency's] deliberative process; to conduct this process in public view would inhibit frank discussion of policy matters and likely impair the quality of decisions." *Id.* at 789–90 (emphasis added). Therefore, as long as the documents are created for the purpose of aiding the *agency's* deliberative process, as were the questionnaires in *Ryan,* they will be deemed *intra*-agency documents even when created by non-agency personnel. *See id.* at 790.

■ Similarly, in *Formaldehyde Institute,* we determined that Exemption 5 applies even to an implicit consultation relationship between an agency and outsiders. *See* 889 F.2d at 1124–25. In that case, an agency employee, acting in his official capacity, submitted a scholarly article to a professional journal for possible publication. After consulting outside reviewers, the journal decided not to publish the article. We thought the journal's letter to the agency (with attached referee's comments) an intra-agency document because the agency had routinely used the journal's review process as part of the agency's *own*

decision whether to publish and in what form. We reiterated that " '[w]hether the author [of the document subject to the FOIA request] is a regular agency employee or a temporary consultant is irrelevant; the pertinent element is the role, if any, that the document plays in the process of agency deliberations.' " *Id.* at 1122 (quoting *CNA Financial Corp. v. Donovan,* 830 F.2d 1132, 1161 (D.C.Cir.1987), *cert. denied,* 485 U.S. 977, 108 S.Ct. 1270, 99 L.Ed.2d 481 (1988)).

*Ryan* (and *Formaldehyde* ), then, stand for the proposition that Exemption 5 permits an agency to protect the confidentiality of communications from outside the agency so long as those communications are part and parcel of *the agency's* deliberative process. As such, they remain intra-agency documents. None of our cases have extended that notion, however, to the protection of deliberations of a *non-agency* either as an interpretation of "intra-agency" or "inter-agency." In the case at bar, the Department had unquestionably ended its consideration as to whether to prosecute, or in any other way proceed against, Representative St Germain *before* it sent the letter to Congress. For that reason, we do not think that the Department's letter to the House Ethics Committee can be withheld under Exemption 5.[2]

### III.

■ That brings us to the Department's alternative argument, that Exemption 7(D) justifies withholding of the letter. Exemption 7(D) protects "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to disclose the identity of a confidential source ... and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation ..., information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). Unlike Exemption 5's deli-

berative process privilege, which depends on the factual content and purpose of the requested document, "the availability of Exemption 7 depends ... upon whether the *source* was confidential." *Shaw v. FBI,* 749 F.2d 58, 61 (D.C.Cir.1984) (emphasis in original) (internal quotations and citation omitted); *see also King v. Department of Justice,* 830 F.2d 210, 235 n. 182 (D.C.Cir. 1987). If the Department can demonstrate that the "information was 'provided in confidence' at the time it was communicated to the FBI," *Irons v. FBI,* 880 F.2d 1446, 1448 (1st Cir.1989) *(en banc* ) (quoting *Shaw,* 749 F.2d at 61), the source will be deemed a confidential one, and both the identity of the source and the information he or she provided will be immune from FOIA disclosure.[3]

■ As with the other FOIA exemptions, "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *see also Shaw,* 749 F.2d at 61. But as we reiterated just recently in *Schmerler v. FBI,* 900 F.2d 333 (D.C.Cir.1990), "the law of this Circuit is that 'in the absence of evidence to the contrary, promises of confidentiality are inherently implicit when the FBI solicits information.' " *Id.* at 337 (quoting *Keys v. Department of Justice,* 830 F.2d 337, 345 (D.C.Cir.1987) (internal quotations omitted)). As long as the Department can show "that the information was solicited during the course of law enforcement investigations, the FBI raises a presumption that assurances were given" in exchange for the information. *Id.*

Dow Jones contends that it has rebutted the *Schmerler* presumption.[4] Those individuals who provided the FBI with information—the allegedly confidential sources—merely described to the FBI matters which presumably occurred in public view. They apparently told the FBI whom Representative St Germain dined with and on what occasions. In the absence of any showing on the part of the government that these sources had some kind of personal or busi-

---

**2.** We are unpersuaded by the Department's contention that our *en banc* opinion in *Wolfe* (and the legislative history we cited there) support a government-wide, inter-branch exemption because we referred to "efficient *Government* operation." *See Wolfe,* 839 F.2d at 773–74 (quoting S.Rep. No. 813, 89th Cong., 1st Sess. 9 (1965)) (emphasis added). In the context of the opinion, it is clear that the word "government" was referring to the Executive Branch. *See id.* at 773 (stating that the deliberative process privilege was an "executive" privilege and that it was intended to protect "the quality of administrative decision-making"); *see also Sears,* 421 U.S.

at 150, 95 S.Ct. at 1516 (referring to Exemption 5 as "the Government's executive privilege").

**3.** As the district court noted, the parties do not dispute that the information contained in the redacted portion of the letter was compiled for law enforcement purposes, by criminal law enforcement authority, and in the course of a criminal investigation. *See* 724 F.Supp. at 991. Consequently, the only Exemption 7(D) issue before us is whether the sources here are confidential.

**4.** Dow Jones also presents the analytically imaginative argument that the confidentiality pre-

ness relationship with the ex-Congressman, Dow Jones argues that there is no reason to believe that they wished confidentiality. We do not think that that proposition follows at all. We doubt that those who witness a congressman's public behavior—whether other congressmen, lobbyists, or restaurant employees—would typically appreciate being identified as the FBI's witnesses. Public behavior of the congressman is one thing; public identification of the witnesses is quite another. We think appellant's claim regarding *all* the witnesses is even weaker than that rejected in *Schmerler.*

In *Schmerler,* a Columbia University anthropology graduate student conducting research at an Indian reservation was sexually assaulted and murdered almost sixty years ago. The victim's nephew, in the course of writing a book about the event, sought disclosure of the FBI files covering the investigation. He particularly wanted the identities of certain individuals at Columbia University who provided character information about the victim. We were not persuaded by the argument that since the information the individuals provided was presumably favorable they needed not fear reprisals (if they were still alive), and that confidentiality was therefore not implicit in those interviews. We refused to be drawn into a sixty-year-old dispute over whether the witnesses would have objected to the public dissemination of their statements. To avoid that sort of difficult, *ad hoc* line drawing, we concluded that whether a source is confidential cannot turn on the substance of the information given. *See Schmerler,* 900 F.2d at 337–38; *see also King,* 830 F.2d at 233 ("[I]t is difficult, if not impossible, to anticipate all respects in which disclosure might damage reputations or lead to personal embarrassment and discomfort.") (internal quotations and citations omitted).

■ We readily admit that the presumption we applied in *Keys,* and especially in *Schmerler,* in practical terms comes close to an irrebuttable one. The requester will rarely, if ever, have absolutely solid evidence showing that the source of an FBI interview in a law enforcement investigation has manifested complete disregard for

confidentiality.[5] Of course, if the exact information given to the FBI has already become public, and the fact that the informant gave the same information to the FBI is also public, there would be no grounds to withhold. But short of these extraordinary circumstances, the "presumption" will govern. We believe, however, that in so interpreting FOIA we are following the Supreme Court's guidance in *United States Dep't of Justice v. Reporter's Comm. for Freedom of the Press,* 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). There, a requester sought information on an FBI rap sheet drawn from public records. The Supreme Court, recognizing that a case-by-case inquiry into the public-private balance under Exemption 7 as to repeated requests for rap sheet information would be a terrible burden on the courts and result in *ad hoc*—and therefore unprincipled—determinations, said that "categorical decisions may be appropriate and individual circumstances disregarded when a case fits into a genus in which the balance characteristically tips in one direction." *Id.* 109 S.Ct. at 1483. By applying such a strong presumption as to the confidentiality of FBI sources interviewed in law enforcement investigations, we are merely following the direction the Supreme Court gave us in *Reporter's Committee.* Since the FBI typically promises confidentiality and rarely—if ever—will a source not desire it, only the starkest and most conclusive evidence of non-confidentiality will rebut the presumption.

The district court issued its opinion before *Schmerler* and therefore distinguished between the sources, holding that the government had established confidentiality with respect to only the primary witness and the associate of the primary witness. In light of the presumption, however, we do not draw any distinctions among the witnesses. All of them were interviewed as part of the FBI's investigation into the question of whether Representative St Germain had committed a crime. As such, all the sources are presumed confidential under Exemption 7(D).

Accordingly, the district court's judgment is affirmed.

*It is so ordered.*

sumption portion of *Schmerler* was dicta—not binding on us—because the appellant there did not contest the government's reading of *Keys.* We disagree, however, with this expansive notion of dicta. But for the presumption, which *Schmerler,* in truth, strengthened over that employed in *Keys,* the case would have come out

the other way; the government's actual evidence of confidentiality was rather thin. *See Schmerler,* 900 F.2d at 337.

5. One can imagine, for instance, a source falsely describing publicly what he or she told the FBI privately.

HARRY T. EDWARDS, Circuit Judge, concurring:

I agree with the majority that the decision in *Schmerler v. FBI*, 900 F.2d 333 (D.C.Cir.1990), is controlling in the case before us, and I therefore concur in the judgment. In my view, however, *Schmerler's* "presumption of confidentiality." is founded on a flawed interpretation of the Freedom of Information Act ("FOIA"). Although I am constrained to follow the holding of *Schmerler,* for it is the law of the circuit, I nevertheless write separately to express my concerns about the viability of this precedent under FOIA.

FOIA plainly states that "the burden is on *the agency* to sustain" the invocation of any FOIA exemption. 5 U.S.C. § 552(a)(4)(B) (1988) (emphasis added). The court in *Schmerler* seemingly disregarded this directive when it held that "the burden was on *appellee* [the FOIA plaintiff] to come forward with evidence that would rebut the presumption that the [FBI] extended promises of confidentiality." 900 F.2d at 337 (emphasis added). Nor will it do to suggest that the Government discharges its statutory burden by showing merely that the FBI interview was part of a criminal investigation. For Exemption 7(D) applies to "information compiled ... in the course of a criminal investigation" *only* if the information is "furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D).

*Schmerler's* presumption of confidentiality also appears to be incompatible with the basic structure of FOIA. Because the Government alone typically has access to information relating to FBI interviews, a FOIA plaintiff usually will be forced to rely on the Government's *Vaughn* index [1] when discharging his "burden ... to come forward with evidence" showing that "it would be unreasonable to infer from the circumstances ... that confidentiality had been extended." *Schmerler,* 900 F.2d at 337. But, as the instant case well illustrates, the Government can satisfy its *Vaughn* index obligations without disclosing enough information to permit *either* an inference of confidentiality *or* an inference of nonconfidentiality. Practically speaking, then, *Schmerler's* presumption of confidentiality is irrebuttable. In light of FOIA's overarching goal of "access to official information long shielded unnecessarily from public view," *EPA v. Mink,* 410 U.S. 73, 80, 93 S.Ct. 827, 832, 35 L.Ed.2d 119

(1973), I cannot accept that Congress intended that the Government be able to prevail on an Exemption 7(D) claim by merely asserting it.

I believe that our approach to "implied confidentiality" prior to *Schmerler* avoided these pitfalls. In both *Keys v. Department of Justice,* 830 F.2d 337 (D.C.Cir. 1987), and *King v. Department of Justice,* 830 F.2d 210 (D.C.Cir.1987), the court found implied assurances of confidentiality only upon identifying specific circumstances *supporting* the inference that confidentiality was necessary to elicit information. *See Keys,* 830 F.2d at 345–46 (concern of Communist party members that disclosure of identities would cause harassment by other members); *King,* 830 F.2d at 235 (close allegiance between subject of investigation and interviewee created conflict of allegiance). These cases nowhere suggest that the burden is on the *plaintiff* to *disprove* the FBI's need for confidentiality. The statement in *Keys* from which *Schmerler* derives its presumption of confidentiality—that "promises of confidentiality [are] 'inherently implicit' " in FBI interviews, 830 F.2d at 345 (quoting *Miller v. Bell,* 661 F.2d 623, 627 (7th Cir.1981), *cert. denied,* 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 484 (1982))—merely reports one of the standards in use in *other* circuits. Indeed, in attempting to reconcile apparently divergent approaches among the circuits, the *Keys* court suggested that *Miller's* "inherently implicit" standard was perfectly compatible with a fact-specific inquiry into whether an inference of confidentiality was warranted. *See* 830 F.2d at 345–46.

All the same, I acknowledge that *Schmerler* is now the law of the circuit. I cannot accept the appellee's suggestion that we should treat *Schmerler* as nonbinding because the FOIA plaintiff's brief in that case did not adequately dispute the Government's depiction of the standard of proof under Exemption 7(D). This court is fully aware of its independent duty to determine what the law is before applying it. It is no doubt tempting to redescribe as "dicta" holdings with which we disagree, but we cannot do so while remaining faithful to the principle that panel decisions bind future panels. In sum, unless and until *Schmerler* is repudiated by an authority higher than the panel that issued it, this court must abide by it.

1. *See Vaughn v. Rosen,* 484 F.2d 820, 826–28 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

Before: WALD, *Chief Judge*, MIKVA, EDWARDS, RUTH B. GINSBURG, SILBERMAN, BUCKLEY, WILLIAMS, D.H. GINSBURG, SENTELLE, THOMAS, HENDERSON, and RANDOLPH, *Circuit Judges*.

## ORDER

### Oct. 5, 1990.

Appellant's Suggestion for Rehearing *En Banc* has been circulated to the full court. The taking of a vote was requested. Thereafter, a majority of the judges of the court in regular active service did not vote in favor of the suggestion. Upon consideration of the foregoing, it is

**ORDERED,** by the Court *en banc*, that the suggestion is denied.

A separate statement of *Circuit Judge* SILBERMAN concurring in the denial of rehearing *en banc*, with whom WILLIAMS, *Circuit Judge*, joins, is attached.

A separate statement of *Circuit Judge* EDWARDS dissenting in the denial of rehearing *en banc*, with whom WALD, *Chief Judge*, and MIKVA, *Circuit Judge*, concur, is attached.

SILBERMAN, *Circuit Judge*, concurring in the denial of rehearing *en banc*, with whom WILLIAMS, *Circuit Judge*, joins: Appellant's primary argument for rehearing is based on the notion that our opinion—and *Schmerler*, on which it is based—rely on an unjustifiably strong presumption that when the FBI interviews witnesses in a *criminal* investigation, those witnesses are a "confidential source" within the meaning of Exemption 7(D). It is argued that this presumption is inconsistent with the undisputed proposition that the government has the burden of proof in FOIA cases. But the presumption is directed, strictly speaking, not at the burden of proof, but at the quantum of evidence necessary to carry the burden. *Cf. Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (discussing allocation of burden of proof in Title VII cases and how an inference creates a presumption in the *prima facie* case). Fixing the burden of proof on a party is plainly not inconsistent with a substantive rule identifying specific facts that will carry the burden.

Confidentiality, of course, is a relative term. When a witness tells an FBI agent something relevant to a criminal investigation the witness assumes, absent special circumstances, that other FBI and law enforcement personnel will have access to the information, which, in a sense, makes the divulgence less "confidential" than if the agent would swear not to tell a soul. But it cannot be seriously argued that one's status as a "confidential source" should turn on the precise scope of the expectation of confidentiality.

There is always some element of confidentiality in this setting unless, at a minimum, both the agent and the witness are wholly indifferent to publication. Our holding in *Schmerler*, which we follow here, is merely that the element of confidentiality typically present in such interviews satisfies the "confidential source" standard. Otherwise, the FBI would routinely be compelled to produce evidence as to the particular expectations of the interviewee and the agent, and we would be obliged on a case-by-case basis to try to determine just how much confidentiality qualifies as a "confidential source." By identifying the set of circumstances that support a strong inference of confidentiality, subject to the possibility of exception in an extraordinary case, we seek to avoid *ad hoc* decisionmaking. *Cf. Schmerler v. Federal Bureau of Investigation*, 696 F.Supp. 717 (D.D.C.1988) (relying on a number of unique factors), *rev'd*, 900 F.2d 333 (D.C. Cir.1990). Because at least some element of confidentiality is virtually always present, *United States Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 109 S.Ct. 1468, 1483, 103 L.Ed.2d 774 (1989) counsels that we treat such questions generically.

EDWARDS, *Circuit Judge*, dissenting in the denial of rehearing *en banc*, with whom WALD, *Chief Judge*, and MIKVA, *Circuit Judge*, concur: I concurred in the panel opinion in *Dow Jones & Co. v. Department of Justice*, 908 F.2d 1006, 1012 (D.C.Cir.1990) (Edwards, J., concurring), because I was bound to apply the law of the circuit, regardless of the flaws that I perceived in it. I cannot concur, however, in today's decision of the full court not to correct a panel decision whose result rests squarely upon a striking misapplication of precedent and a bold disregard for the statute it purports to interpret.

The Freedom of Information Act establishes that Government records are open to public disclosure, subject only to nine "exclusive" and "narrowly construed" exemptions. *See Department of the Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976). One such exemption is section 7(D) of FOIA, which permits the Government to withhold

records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to disclose the identity of a confidential source ... and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation ..., information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D) (1988). FOIA also provides that "the burden is on *the agency* to sustain" the invocation of any listed exemption. 5 U.S.C. § 552(a)(4)(B) (1988) (emphasis added). The panel in *Dow Jones,* following the court's recent decision in *Schmerler v. F.B.I.,* 900 F.2d 333 (D.C.Cir. 1990), ignored these statutory mandates and held that the essential requirement of Exemption 7(D) that the information derive from a "confidential source" may be presumed satisfied whenever the information sought had its roots in an F.B.I. witness interview.

The *Dow Jones* majority is excessively modest in suggesting that *Dow Jones* and *Schmerler* held *"merely* that the element of confidentiality typically present in such [F.B.I.] interviews satisfies the 'confidential source' standard." *See* Statement of Silberman, J., concurring in the denial of rehearing *en banc* (emphasis added). In fact, the judgment in *Schmerler* is a rather remarkable example of judicial invention, for the holding of the court bears no discernible relationship to the statute under review. *Schmerler,* by judicial fiat, simply does away with Exemption 7(D)'s express "confidential source" limitation through the invention of a presumption that anyone providing information to the F.B.I. has done so under a promise of confidentiality. In so doing, *Schmerler* changed the law of this circuit, *see Dow Jones,* 908 F.2d at 1013 (Edwards, J., concurring), casting it at odds not only with the law in other circuits, *id.,* but more to the point, with the will of Congress expressed in the statute itself.

The presumption created in *Schmerler,* and reinforced in *Dow Jones,* flatly defies FOIA's unmistakable admonition that "the burden is on *the agency* to sustain" the invocation of any listed exemption. 5 U.S.C. § 552(a)(4)(B) (1988) (emphasis added). A burden that is presumed satisfied is, of course, no burden at all. This error is compounded because, as the majority itself frankly concedes, the presumption applied in *Dow Jones* is essentially irrebuttable. *See Dow Jones,* 908 F.2d at 1012 ("We readily admit that the presumption ... in

practical terms comes close to an irrebuttable one.").

The majority seems to believe that adherence to the presumption invented in *Schmerler* represents an improvement in FOIA's statutory design, because application of the statute as it was written—requiring the Government to carry its burden of showing each element necessary to invoking Exemption 7(D), including the requirement that the information it desires to protect was actually derived from a "confidential source"—would be unduly burdensome to both the F.B.I. and the courts. *See* Statement of Silberman, J., concurring in the denial of rehearing *en banc* ("Otherwise, the FBI would routinely be compelled to produce evidence as to the particular expectations of the interviewee and the agent, and we would be obliged on a case-by-case basis to try to determine just how much confidentiality qualifies as a 'confidential source.'"). Burdensome or not, we are constrained to enforce the statute as it was written by Congress.

The perils of the majority's course are quite plain: "[I]f courts were free to 'correct' what they believe to be congressional oversights by construing unambiguous statutes to the contrary of their plain meaning—apart from that rare case in which specific legislative history compels such a result—even a good faith attempt to further Congress's goals would open the way to judicial hijacking of the power to legislate." *Consolidated Rail Corp. v. United States,* 896 F.2d 574, 579 (D.C.Cir. 1990) (D.H. Ginsburg, J.). It is not the role of this court to rewrite statutes to satisfy the legislative policy preferences of the judges. Because, in my view, *Schmerler* and *Dow Jones* smack of "judicial hijacking of the power to legislate," I dissent from the court's decision denying the suggestion of *en banc* review.