**Robert Grady JOHNSON, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, et al., Defendants.**

**Civ. A. No. 89–2842.**

United States District Court, District of Columbia.

Feb. 13, 1991.

---

Seth O. Waxman, Michael J. Barta, Washington, D.C., for plaintiff.

Nathan Dodell, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM

GESELL, District Judge.

This is a Freedom of Information Act ("FOIA") case raising novel issues under 5 U.S.C. § 552(b)(7)(C) and (7)(D). Plaintiff Robert Grady Johnson, a state death row inmate, seeks possibly exonerating information from the Federal Bureau of Investigation relating to his involvement in a 1984 bank robbery in Geronimo, Oklahoma.

In 1985, plaintiff was found guilty in Oklahoma state court of four counts of murder and other charges arising from the bank robbery. A federal proceeding involving the same robbery had also been initiated, but there was no federal trial or conviction.

Initially plaintiff proceeded with his FOIA request *pro se*, requesting material from the FBI Oklahoma Field Office and FBI Headquarters. Several thousand pages were involved. The FBI refused to waive fees, and plaintiff filed suit. The Court appointed counsel, who filed an Amended Complaint on January 9, 1990. An urgent aspect of plaintiff's request was based on some information he had assembled supporting his claim that he was not at the bank during the robbery and was unaware of it until after it had occurred.

On May 2, 1990, this Court entered a Memorandum and Order holding that plaintiff was entitled to a waiver of fees in connection with two categories of possibly exculpatory documents:

> (1) any material covered by the requests developed during the FBI investigation or subsequently suggesting, directly or indirectly, that only one person came to the bank and robbed it and/or (2) any material suggesting, directly or indirectly, that plaintiff was unaware of the robbery when it occurred and/or subsequently.

The Court originally saw no basis for a fee waiver except as to the papers of this narrow exculpatory nature. The parties

understood that the Court had passed on all fee waiver issues in its May 2 opinion, and plaintiff, being unable or unwilling to pay for additional materials, dropped his claims for non-exculpatory materials.

Subsequent developments support the conclusion that fees should not be waived with respect to non-exculpatory documents. The prosecution of plaintiff raises no special public interest aspect as to the operations of the federal government under 5 U.S.C. § 552(a)(4)(A)(iii), given the open participation of the FBI in the state prosecution as indicated later in this Memorandum. As the case has developed, the issues have remained highly personal as to plaintiff, nothing more.

Following the Court's May 2 decision and pursuant to a June 8, 1990, Stipulation of the parties, the FBI searched its files for exculpatory materials, applying a definition of "exculpatory" that encompassed but went somewhat beyond the requirements of the Court's decision. Counsel continued informal efforts to resolve areas of concern. Ultimately, the *Vaughn* indices covered exculpatory materials totalling more than 389 pages. More than 270 of those pages were disclosed, some with redactions. Defendants withheld the remaining materials, citing law enforcement exemptions to FOIA at 5 U.S.C. § 552(b)(7)(C), (D), and (F). Dispositive cross-motions for summary judgment were filed, and in the very course of briefing the motions, counsel further narrowed the issues. At a brief status conference on February 8, 1991, the Court was assured that only two among the many issues briefed presently remain for resolution.

Plaintiff contends that documents being withheld pursuant to the law enforcement exemptions, in whole or in part, which defendants admit may have some exonerating significance, must be released if they either (1) come from a source quoted in a contemporaneous news account or (2) if they consist of material as to which *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), would have applied.

Before turning to these two remaining issues, reference to the FBI's role in the prosecution and the nature of materials already disclosed to date is required. While there was no federal prosecution, the FBI was involved in investigating the bank robbery. The Declaration of Special Agent Granville Long, filed March 15, 1990, discloses that he was assigned the FBI investigation on the day of the bank robbery, that he prepared the investigative report which included "all pertinent investigative results," including interviews and laboratory results, that the report recorded his opinion that plaintiff Johnson was not at the bank but waited in his apartment, that this opinion was made known to the state trial judge before trial, and that he attended the entire trial. While it is not clearly established whether the state trial judge disclosed the FBI investigative report in whole or in part to plaintiff's trial attorney, the FBI placed no restrictions on the use of its material for purposes of trial.

The trial itself involved some 82 witnesses. Originally many of the papers concerning these witnesses were withheld, but the Bureau later released pertinent data as to each of them after the *Vaughn* indices were filed. It appears, however, that the FBI has some information in its file, still being withheld, which was obtained in confidence from four persons whose names and comments may have appeared in contemporary news accounts. In addition, materials of some possible exculpatory nature may also be in the portions still withheld after the substantial disclosures to date.

The two remaining issues are readily resolved once the nature of the Freedom of Information Act is considered. FOIA is not a discovery statute. It is a disclosure statute specifically restricting disclosure in areas that would otherwise be invoked with respect to the FBI by defendants in criminal prosecutions. Law enforcement materials that concern ongoing investigations, matters of a personal, private nature, and confidential sources are flatly protected against disclosure.

█ FOIA decisions in this Circuit create an almost ironclad presumption that information given to the FBI by a source is confidential. Conflicting considerations,

such as a substantial passage of time or factual content or the possible public consequences of disclosure are basically irrelevant. Indeed, even the use of the information in court, by itself, does not breach the confidence of the communication. If the information was confidential at the time it was given to the FBI, the confidentiality remains intact. Thus, it is well recognized that confidentiality is inherently implicit in the giving of the information, and policy considerations require protecting it regardless of considerations such as those presented here. *See Dow Jones & Co., Inc. v. Department of Justice*, 908 F.2d 1006 (D.C.Cir.1990); *Schmerler v. FBI*, 900 F.2d 333 (D.C.Cir.1990); *Keys v. Department of Justice*, 830 F.2d 337 (D.C.Cir.1987).

■ The mere fact that someone makes a public statement concerning an incident does not constitute a waiver of the Bureau's confidential file. A press account may be erroneous or false or, more likely, incomplete. To the extent the precise information is already public, disclosure of the same information may be required, *see Dow Jones*, 908 F.2d at 1011, although it may be of no value. To the extent more detailed, different or unrelated information was given the Bureau, such information must still be protected as confidential.

The Bureau's FOIA staff is in no position to explore and investigate word for word the similarity of purported public statements and private statements given in confidence found in its files. It is logical, moreover, to assume that any in-depth FBI interview will concern aspects of an individual's reliability and involvement to an extent not revealed in any press report. Yet this is the very type of confidential information plaintiff still seeks. There is no requirement that confidential information developed by the FBI in the course of a law enforcement investigation must be deemed waived because an informing source made a statement related to the same subject matter to the press.

■ Resort to *Brady v. Maryland* as grounds for waiving confidentiality is even more outside the proper role of FOIA. Exceptions cannot be made because of the subject matter or the identity of the requester. *See United States Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). The FBI FOIA section faces a monumental task, and it must proceed in a uniform, objective manner or the process itself will be compromised.[1] It has neither the competence nor the authority to make *Brady*-type judgments. The FBI is not required to determine whether or not a paper sought by a FOIA requester is or is not a paper that presently constitutes or retroactively would have constituted *Brady* material in one or more state or federal prosecutions. Nor is the FBI required by FOIA to forego a statutory exemption for a document in its possession because the document has been identified as possibly exculpatory. Judicial process is available, both pre-trial and post-trial, for these purposes.

This Court must deal with any claim of exemption by reference to established FOIA standards. Only a policy official somewhere in the Justice Department has discretion to waive an available exemption.

Plaintiff's Motion for Summary Judgment is denied, defendants' Motion for Summary Judgment is granted, and the Amended Complaint is dismissed.

---

1. As of November 30, 1989, the Freedom of Information and Privacy Act (FOIPA) Section at FBI Headquarters employed a total of 116 Miscellaneous Documents Examiners (MDEs) who review documents for material releasable under the FOIA and Privacy Act. Nearly five thousand requests, involving an estimated 2.7 million pages, were assigned to these MDEs as of November 30, 1989. An additional 2,512 other requests were on hand in the FOIPA Section, awaiting assignment.