TATEL, Circuit Judge,
dissenting:
In November 2001, President Bush issued a military order authorizing the Department of Defense to create military commissions to try suspected terrorists. DoD then sought advice about how to implement the order from legal luminaries outside the agency, including Bernard Meltzer, Lloyd Cutler, Ruth Wedgwood, Newton Minow, Terrence O’Donnell, William Coleman, Geoffrey Hazard, William Webster, Martin Hoffman, Jack Goldsmith, and Joseph Tompkins. In response, these outside experts sent letters, faxes, or emails to DoD. All were unpaid volunteers and none were appointed by DoD to any type of committee, task force, or other position, or made a part of DoD in any other way. Nonetheless, the district court held — and now this court agrees— that these documents are “intra-agency memorandums or letters” protected from public disclosure under Exemption 5 of the Freedom of Information Act. Despite the textual implausibility of this holding, I acknowledge that this court’s precedent makes this a close case. As a policy matter, moreover, I agree with my colleagues that agencies will obtain more and better *688 advice from outsiders if able to promise confidentiality. But I must respectfully dissent because I believe the court’s holding does exactly what the Supreme Court forbade in Department of Interior v. Klamath Water Users Protective Ass’n, 532 U.S. 1, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001): it makes “ ‘intra-agency’ ... a purely conclusory term, just a label to be placed on any document the Government would find it valuable to keep confidential.” Id. at 12,121 S.Ct. 1060.
I.
The Freedom of Information Act (FOIA), 5 U.S.C. § 552, requires agencies to release all records upon public request unless they fall within an exemption enumerated in the Act. Klamath, 532 U.S. at 7, 121 S.Ct. 1060. These exemptions “must be narrowly construed,” and “do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act.” Dep’t of Air Force v. Rose, 425 U.S. 352, 361, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976).
DoD withheld the documents at issue here under FOIA Exemption 5, which protects from disclosure “inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.” 5 U.S.C. § 552(b)(5). “To qualify, a document must thus satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it,” such as the attorney-client, deliberative process, or attorney work product privileges. Klamath, 532 U.S. at 8, 121 S.Ct. 1060. Because appellant National Institute of Military Justice concedes that these documents fall within the deliberative process privilege, the only question before us is whether they qualify as “in-tra-agency.”
In answering this question, the court turns immediately to our precedent, but I begin with the statute’s text. The prefix “intra” means “within.” Webster’s Third New International Dictionary 1185 (1993); accord Black’s Law Dictionary 841 (8th ed.1999). Thus, “the most natural meaning of the phrase ‘intra-agency memorandum’ is a memorandum that is addressed both to and from employees of a single agency.” Klamath, 532 U.S. at 9, 121 S.Ct. 1060 (quoting DOJ v. Julian, 486 U.S. 1, 18 n. 1, 108 S.Ct. 1606, 100 L.Ed.2d 1 (1988) (Scalia, J., dissenting)). That said, several courts of appeals, including this one, “have held that [Exemption 5] extends to communications between Government agencies and outside consultants hired by them.” Id. at 10, 108 S.Ct. 1606 (emphasis added). For example, in Hoover v. Department of Interior, 611 F.2d 1132 (5th Cir.1980), the Fifth Circuit held that Exemption 5 protected a memo prepared for the agency by a consultant it hired to appraise a piece of property it wanted to buy. Similarly, in Government Land Bank v. General Services Administration, 671 F.2d 663 (1st Cir.1982), the First Circuit held that Exemption 5 protected a property appraisal prepared for the agency by an outside consultant.
Cases like these, which apply Exemption 5 to protect documents written by paid outside consultants, certainly stretch the meaning of “intra-agency,” arguably disregarding the Supreme Court’s directive that FOIA exemptions “must be narrowly construed.” Rose, 425 U.S. at 361, 96 S.Ct. 1592. But they still plausibly interpret “intra-agency”: when an agency hires consultants to perform a task, it’s not unreasonable to say they have become part of the agency for purposes of that project, making any documents they produce for *689 the project “intra-agency.” One could even imagine situations in which a document written by a volunteer could plausibly be considered “intra-agency” — for example, if a person were appointed to a formal advisory committee created by an agency pursuant to the Federal Advisory Committee Act (FACA), 5 U.S.CApp. 2 §§ 1-16, and in that capacity wrote a memorandum to an agency employee. Cf. Soucie v. David, 448 F.2d 1067, 1077-78 & n. 44 (D.C.Cir.1971) (stating in dicta that a report prepared by outside experts formally appointed to a federal advisory panel might be protected under Exemption 5).
In this case, however, the government asks us to stretch Exemption 5 beyond its breaking point, to cover everyone an agency asks for advice. The government’s argument flatly ignores the statute’s text, as well as our obligation to construe FOIA exemptions narrowly. Nonetheless, the government insists that our precedent requires the result it seeks, and this court now agrees, relying principally upon three cases from this circuit. Below I describe these cases and then explain why I believe Klamath undermines all of them.
The first case, Ryan v. DOJ, 617 F.2d 781 (D.C.Cir.1980), involved questionnaires the Attorney General sent to members of the Senate asking how they chose whom to recommend for district court judgeships. Id. at 784. Responding to a FOIA request seeking the senators’ responses, the Attorney General argued that the questionnaires were “intra-agency” documents protected by Exemption 5. This court agreed, explaining:
Congress apparently did not intend “inter-agency” and “intra-agency” to be rigidly exclusive terms, but rather to include any agency document that is part of the deliberative process. We cannot overlook the fact that the documents here were generated by an initiative from the Department of Justice, i.e., the questionnaire sent out by the Department to the Senators. The Senators replied to the questionnaire.... When an agency record is submitted by outside consultants as part of the deliberative process, and it was solicited by the agency, we find it entirely reasonable to deem the resulting document to be an “intra-agency” memorandum for purposes of ... Exemption 5.
Id. at 790 (emphasis added) (footnotes omitted).
In the second case, Formaldehyde Institute v. Department of Health & Human Services, 889 F.2d 1118 (D.C.Cir.1989), an HHS scientist submitted an article for publication in a peer-reviewed journal. After the journal gave the article to outside reviewers who recommended against publishing it, the journal sent a rejection letter, along with the comments of its reviewers, to the scientist and HHS. We held the comments protected under Exemption 5:
The Institute argues, and the District Court concluded, that because the Journal is neither part of HHS nor one of HHS’[s] consultants, the Review Letter is not entitled to Exemption 5 protections ....
... Ryan established, [however,] ... that “inter-agency” and “intra-agency” are not rigidly exclusive terms, but rather embrace any agency document that is part of the deliberative process. Thus, both the Institute and the District Court err in focusing on the absence of any formal relationship between the Journal’s reviewers and HHS.
Id. at 1123 (emphasis added) (citations and internal quotation marks omitted).
In the third case, Public Citizen, Inc. v. DOJ, 111 F.3d 168 (D.C.Cir.1997), Public *690 Citizen sought disclosure of letters sent by former Presidents Reagan and Bush to the National Archives and Records Administration regarding access to their presidential papers. We held the letters protected under Exemption 5:
While Public Citizen is doubtless right that a former President is not an agency under FOIA, records of communications between an agency and outside consultants qualify as “intra-agency” for purposes of Exemption 5 if they have been created for the purpose of aiding the agency’s deliberative process. It is irrelevant whether the author of the documents is a regular agency employee or a temporary consultant. Two circumstances make application of this doctrine to the disputed records peculiarly appropriate.
First, the former President in this context can hardly be viewed as an ordinary private citizen. He retains aspects of his former role — most importantly, for current purposes, the authority to assert the executive privilege regarding Presidential communications....
Second, the consultative relationship involved here is not only explicit, but is mandated by statute. The Presidential Records Act establishes an elaborate structure for the management of Presidential records. The United States retains ownership, possession and control. But the President plays a significant role even after he leaves office.
Id. at 170-71 (emphasis added) (citations and internal quotation marks omitted).
As an initial matter, Public Citizen and Ryan are distinguishable from this case. In Public Citizen we relied heavily on two facts not present here: former Presidents are still part of the government in many ways, and a statute expressly required the National Archives and Records Administration to consult with them. Both facts made it more plausible than it is here to call the documents at issue “intra-agency.” And in Ryan the “outsiders” offering comments were U.S. senators, making it more reasonable to consider their comments “inter-agency or intra-agency.”
That said, were Public Citizen, Ryan, and Formaldehyde the only cases on point, we would undoubtedly have to rule for DoD based on the broad principles we announced in these cases. All three cases say it makes no difference whether the documents at issue were generated by someone within the agency. All that matters, they hold, is that the documents played a role in the agency’s deliberative process, a standard indisputably met here.
The problem with these cases, however, is that in Klamath the Supreme Court rejected exactly this type of reasoning. In Klamath, Indian tribes were communicating with the Department of Interior about their interests during upcoming federal and state water allocation decisions. The government argued that its communications with the tribes enjoyed Exemption 5 protection because confidential communications with the tribes were crucial to the agency’s deliberative process. Flatly rejecting this argument, the Supreme Court explained: “the first condition of Exemption 5 is no less important than the second; the communication must be ‘inter-agency or intra-agency.’ ” 532 U.S. at 9,121 S.Ct. 1060 (quoting 5 U.S.C. § 552(b)(5)) (emphasis added). The Court thus chided the government for making a fundamental error:
[T]he Department’s argument skips a necessary step, for it ignores the first condition of Exemption 5.... The Department seems to be saying that “intra-agency” is a purely conclusory term, just a label to be placed on any document the *691 Government would find it valuable to keep confidential.
There is, however, no textual justification for draining the first condition of independent vitality ....
Id. at 12, 121 S.Ct. 1060 (emphasis added).
The Court then went on to decide Kla-math on a narrow ground. While acknowledging that some courts of appeals had “held that [Exemption 5] extends to communications between Government agencies and outside consultants hired by them,” id. at 10, 121 S.Ct. 1060 (emphasis added), the Court expressly declined to decide whether consultants’ reports generally “may qualify as intra-agency under Exemption 5,” id. at 12, 121 S.Ct. 1060. Instead, it held that even if some communications from paid consultants could qualify for Exemption 5 protection, communications from the tribes in Klamath could not because unlike the typical consultant, who “does not represent an interest of its own ... when it advises the agency that hires it,” id. at 11, 121 S.Ct. 1060, the tribes, in their communications with the Department of Interior, were representing their own interests, id. at 14, 121 S.Ct. 1060.
Klamath thus presents us with a dilemma. While leaving open the possibility that some communications from consultants may qualify for Exemption 5 protection, the decision also makes clear that “the first condition of Exemption 5 is no less important than the second; the communication must be ‘inter-agency or in-tra-agency.’ ” Id. at 9, 121 S.Ct. 1060 (quoting 5 U.S.C. § 552(b)(5)) (emphasis added). Klamath also warns that “[t]here is ... no textual justification for draining the first condition of independent vitality.” Id. at 12,121 S.Ct. 1060. Thus, our earlier cases protecting communications from outside consultants under Exemption 5 remain good law only to the extent they give “independent vitality” to the meaning of “intra-agency.”
In my view, none of the cases the court relies on passes this test. In Ryan, the court held, in language this court never mentions: “Congress apparently did not intend ‘inter-agency’ and ‘intra-agency’ to be rigidly exclusive terms, but rather to include any agency document that is part of the deliberative process.” 617 F.2d at 790 (emphasis added). Formaldehyde holds exactly the same thing: “ ‘Inter-agency and ‘intraagency’ are not rigidly exclusive terms, but rather embrace any agency document that is part of the deliberative process.” 889 F.2d at 1123 (citing Ryan, 617 F.2d at 790) (emphasis added); see also Dow Jones & Co. v. DOJ, 917 F.2d 571, 575 (D.C.Cir.1990) (“Ryan (and Formaldehyde), then, stand for the proposition that Exemption 5 permits an agency to protect the confidentiality of communications from outside the agency so long as those communications are part and parcel of the agency’s deliberative process.”). And Public Citizen holds that “records of communications between an agency and outside consultants qualify as ‘intra-agen-cy’ for purposes of Exemption 5 if they have been ‘created for the purpose of aiding the agency’s deliberative process.’ ” 111 F.3d at 170 (quoting Dow Jones, 917 F.2d at 575). All three cases thus define “intra-agency” documents as those that play a role in the agency’s deliberative process, regardless of their source. Yet such reasoning is precisely what Klamath rejects: the “argument skips a necessary step, for it ignores the first condition of Exemption 5” and makes “ ‘intra-agency’ ... a purely conclusory term.” 532 U.S. at 12,121 S.Ct. 1060.
Despite this crucial language from Kla-math, the court holds that our earlier cases “compel us to conclude that documents such as the ones here- — submitted *692 by non-agency parties in response to an agency’s request for advice — are covered by Exemption 5.” Maj. Op. at 681. The court derives this test from Ryan’s statement that “[wjhen an agency record is submitted by outside consultants as part of the deliberative process, and it was solicited by the agency, we find it entirely reasonable to deem the resulting document to be an ‘intra-agency’ memorandum for purposes of ... Exemption 5.” 617 F.2d at 790. According to the court, this test from Ryan survives Klamath because it somehow gives “independent vitality” to “intra-agency.” I would agree if the court read this passage from Ryan — and limited its holding here — to mean that Exemption 5 protects documents agencies solicit from people who could plausibly be called “in-tra-agency,” such as paid consultants or members of official agency committees created under FACA. The problem, however, is that the court holds that a document qualifies as “intra-agency” if an agency solicits it from anyone.
Rather than giving “independent vitality” to “intra-agency,” this test redefines that term. “Intra” means “within,” and “[ijn the absence of an indication to the contrary, words in a statute are assumed to bear their ‘ordinary, contemporary, common meaning.’ ” Walters v. Metro. Educ. Enters., Inc., 519 U.S. 202, 207, 117 S.Ct. 660, 136 L.Ed.2d 644 (1997) (quoting Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P’ship, 507 U.S. 380, 388, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)). In enacting FOIA, Congress gave no indication that it intended a previously unheard of definition of “intra,” so we are bound by the normal meaning of the term. See United States v. Weber Aircraft Corp., 465 U.S. 792, 802, 104 S.Ct. 1488, 79 L.Ed.2d 814 (1984) (stating that “compelling evidence of congressional intent ... would be necessary to persuade us to look beyond the plain statutory language” of Exemption 5).
The court nonetheless holds that “documents ... submitted by non-agency parties in response to an agency’s request for advice” are “intra-agency,” Maj. Op. at 681, effectively declaring that people come “within” an agency once the agency asks for their opinions. In my view, this does not represent a “common sense interpretation of ‘intra-agency.’ ” Id. at 685 (quoting Ryan, 617 F.2d at 790). Indeed, under the court’s rule, if an agency held a press conference and asked citizens to send in advice, letters from everyone who responded would qualify as “intra-agency.” Seeking to escape this untenable result, the court adds a new requirement: the solicitation must be “formal.” Id. at 687. Requiring formality, however, does nothing to prevent absurd results. For example, an agency request for advice published in the Federal Register would be “formal,” but hardly enough to make letters sent by members of the public who responded “in-tra-agency.” Perhaps by “formal” the court means individualized, but if an agency sent personalized letters to thousands of citizens asking for advice, no one could plausibly call their responses “intra-agen-cy.” The court next suggests that a solicitation suffices if addressed to a “discrete group of experts.” Id. But a DoD request for advice to every law professor in the country would qualify as a request to a “discrete group of experts,” yet the professors’ responses plainly would not be “intra-agency.” Apparently unable to distinguish away this ridiculous consequence of its rule, the court instead attacks my reading of the statute as lacking any basis in Exemption 5’s text and leading to equally absurd results. Id. The court is incorrect on both counts.
My discussion of the plausible outer limits of Exemption 5 — as possibly including *693 some paid consultants and unpaid members of official agency committees — flows directly from the statute’s text: it rests on the “ordinary, contemporary, common meaning” of “intra-agency.” Pioneer, 507 U.S. at 388, 113 S.Ct. 1489. That is, as I explained above, one can plausibly say that some paid consultants and members of official agency committees have come “within” the agency. By contrast, the principles the court develops in response to the troubling examples in the previous paragraph have no basis in Exemption 5’s text. An agency’s mere request for advice, no matter how formal or selective, has nothing to do with whether a person’s response comes from within or outside the agency. Without some indicia that the person responding is “within” the agency, such as a paid consulting contract, “intra-agency” has no meaning. Moreover, contrary to the court’s claim, nothing I have said even suggests a “bright-line rule” that any person who receives “nominal payment” or is a member of a “nominal committee” qualifies as “intra-agency.” Maj. Op. at 687. I have said only that at least some paid consultants and members of formally created agency committees could plausibly qualify as “intra-agency.” If, as the court hypothesizes, an agency called law professors “committee members” merely because it asked for their advice once, id. at 687, they would not qualify as “intra-agency.” This ruse would fail not only because it would amount to a transparent attempt to game Exemption 5, but also because there would be no meaningful indicators that the professors had actually come within the agency, such as might exist for members of official agency committees that meet and consult regularly with agency officials. Making matters even worse, such a “committee” would violate FACA in several ways, including that it would have been created neither by statute nor agency order published in the Federal Register. 5 U.S.C.App. 2 § 9(a). In the end, however, I need not address every such hypothetical, for regardless of where we ultimately establish the outer boundaries of “intra-agency,” here it is crystal clear that the experts who submitted comments do not qualify.
Of course, I understand the court’s desire to interpret Exemption 5 to accomplish what it perceives to be that exemption’s goal, but we may not use statutory purpose to produce an unreasonable interpretation. See Freeman v.B & B Assocs., 790 F.2d 145, 149 (D.C.Cir.1986) (“[W]e will not ignore the words of the statute in pursuit of some disembodied congressional purpose.”). “[TJhat Congress might have acted with greater clarity or foresight” by protecting some communications from outside volunteers “does not give [this] court [ ] a carte blanche to redraft [the] statute [ ] in an effort to achieve that which Congress is perceived to have failed to do.” United States v. Locke, 471 U.S. 84, 95, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985).
In any event, looking to FOIA’s purpose gives no clear answer to the question before us. Congress certainly intended Exemption 5 to ensure that agencies not “operate in a fishbowl,” H.R. Rep. No. 89-1497, at 10 (1966), as reprinted in 1966 U.S.C.C.A.N. 2418, 2427, but it also “attempted to delimit the exception as narrowly as consistent with efficient Government operation,” S. Rep. No. 89-813, at 9 (1965), suggesting that Congress never intended courts to expand the exemption beyond its terms. What’s more, “disclosure, not secrecy, is the dominant objective of [FOIA].” Rose, 425 U.S. at 361, 96 S.Ct. 1592. Because FOIA thus embodies conflicting purposes, we must presume that Congress used language it believed properly reconciled these goals. “[D]eference to the supremacy of the Legislature, as well as recognition that [members of Con *694 gress] typically vote on the language of a bill, generally requires us to assume that ‘the legislative purpose is expressed by the ordinary meaning of the words used.’ ” Locke, 471 U.S. at 95, 105 S.Ct. 1785 (quoting Richards v. United States, 369 U.S. 1, 9, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962)).
Finally, and crucially, the court’s definition of “intra-agency” disregards the Supreme Court’s command that FOIA exemptions “be narrowly construed,” Rose, 425 U.S. at 361, 96 S.Ct. 1592, and “read strictly in order to serve FOIA’s mandate of broad disclosure,” Klamath, 532 U.S. at 16, 121 S.Ct. 1060. Whatever the policy merits of the court’s interpretation of “in-tra-agency,” it is far from narrow or strict.
Despite these problems with its approach, the court maintains that our precedent demands its result. It offers a number of reasons for this conclusion, each of which I think flawed.
To begin with, the court finds “no basis to jettison our binding circuit precedent,” Maj. Op. at 682, because Klamath never determined whether consultants’ reports “may qualify as intra-agency under Exemption 5,” 532 U.S. at 12, 121 S.Ct. 1060. But Klamath did decide that courts may not “ignore the first condition of Exemption 5” and make “ ‘intra-agency’ ... a purely conclusory term,” id. — precisely what this court did in Ryan, Formaldehyde, and Public Citizen. Thus, the test set forth in United States v. Williams, 194 F.3d 100 (D.C.Cir.1999), upon which the court relies, Maj. Op. at 682-83 n. 7, is met here because Klamath “eviscerates” the reasoning in the Ryan line of cases. Williams, 194 F.3d at 105. Indeed, Kla-math so clearly undermines Formaldehyde that even under the expansive definition of “intra-agency” the court adopts today, Formaldehyde would have come out the opposite way, for there the agency did not solicit the documents it sought to protect— rather, an outside journal solicited the comments and later gave them to the agency. This highlights just how much Klamath has already “jettison[ed] our binding circuit precedent.” See In re Sealed Case, 352 F.3d 409, 412 (D.C.Cir.2003) (“[A] three-judge panel may always ... determine ... that a prior holding has been superseded, and hence is no longer valid as precedent.” (citations and internal quotation marks omitted)).
Next, the court insists it is irrelevant that the individuals who offered advice to DoD were “private citizens rather than government employees or paid contract consultants,” saying “we see no reason why the absence of a contract or compensation should differentiate them from the ‘typical’ outside agency consultants.” Maj. Op. at 683. But the lack of a contract or compensation matters. For one thing, contracting with and paying a consultant establishes a formal relationship between that person and the agency, making it at least plausible to consider the person “in-tra-agency.” In contrast, the court allows agencies to describe anyone they ask for advice as “consultants,” never explaining how private citizens can reasonably be described as “intra-agency” merely because an agency asks for their views. Moreover, although the court seeks support for its holding in Klamath’s statement that outside consultants “may be enough like the agency’s own personnel to justify calling their communications ‘intra-agency,’ ” Maj. Op. at 685 (quoting Klamath, 532 U.S. at 12, 121 S.Ct. 1060), it ignores that Kla-math was referring to “communications between Government agencies and outside consultants hired by them.” 532 U.S. at 10, 121 S.Ct. 1060 (emphasis added); see also id. (“[T]he consultants in these cases were independent contractors.... ”).
*695 Lastly, the court believes that our post-Klamath decision in Judicial Watch, Inc. v. Department of Energy, 412 F.3d 125 (D.C.Cir.2005), reaffirms Ryan, Formaldehyde, and Public Citizen. But this reading overstates our holding in Judicial Watch. There we held that although the National Energy Policy Development Group (NEPDG) — a body composed entirely of federal employees from many agencies who advised the President on energy policy — was not an agency within the meaning of FOIA, Exemption 5 still protected documents created or received by the group as part of its deliberative process. Our rationale, however, was not that it was irrelevant whether the documents were “intra-agency.” Instead, we held that because the federal employees who made up the NEPDG were advising the President, they were, in effect, part of the President’s staff, and their documents were therefore protected under earlier decisions holding that documents prepared by presidential staff enjoy Exemption 5 protection. See id. at 129 (“Neither Exemption 5 nor the cases interpreting it distinguish between the decision-making activities of an ‘agency’ subject to the FOIA and those of the President and his staff...
To be sure, after reaching this conclusion we went on to note, in language the court cites, that our holding was “not inconsistent with [Exemption 5’s] textual limitation to ‘intra-agency’ or ‘inter-agency’ communications,” because in Ryan and other cases we had established “that a document need not be created by an agency or remain in the possession of the agency in order to qualify as ‘intra-agency.’ ” Id. at 130. As an example of this principle, we pointed to Ryan’s statement quoted above: “When an agency record is submitted by outside consultants as part of the deliberative process, and it was solicited by the agency, we find it entirely reasonable to deem the resulting document to be an ‘intra-agency’ memorandum for purposes of ... Exemption 5.” Id. (quoting Ryan, 617 F.2d at 790). In citing this passage from Ryan, however, we could not possibly have been holding that documents solicited from outside volunteers qualify as “intra-agency,” for no such documents were at issue in Judicial Watch. All we actually held is something undisputed here: that at least some documents created by people other than agency employees may qualify as “intra-agency.” Moreover, as explained above, reading this statement to apply to documents solicited from anyone fails to account for Klamath; it redefines “intra-agency” rather than giving the term “independent vitality.”
II.
Whether agencies should be able to withhold communications they solicit from outside volunteers is a difficult policy question about which reasonable people disagree. The National Institute of Military Justice argues that allowing agencies to withhold such communications will allow “secret participation by members of the public in critical agency rule-making processes.” Appellant’s Opening Br. 21. The government and this court respond that allowing agencies to promise confidentiality will encourage candid advice from outside advisors and thus improve agency de-cisionmaking.
As a policy matter, I agree with my colleagues. Agencies will obtain better advice if they can promise confidentiality to outside volunteers whose views they solicit, and I think the benefits of such advice will outweigh the cost in lost transparency. But my view on this issue is not the one that matters. The proper way to resolve this policy issue is not for this court to stretch Exemption 5’s words to cover whatever it thinks they should, but rather *696 for Congress to hold hearings, determine whether it wishes to protect communications from outside volunteers, and modify Exemption 5’s language accordingly.
We find ourselves in a situation similar to that we faced in Dow Jones & Co. v. DOJ, 917 F.2d 571 (D.C.Cir.1990). There we said: “It may well be true that if Congress had thought about this question, the Exemption would have been drafted more broadly to include [communications like this one]. But Congress did not, and the words simply will not stretch to cover this situation.... ” Id. at 574. Because Exemption 5’s words “simply will not stretch to cover this situation,” id., and because the result the court reaches contravenes Klamath, I would reverse the district court and direct DoD to make these documents public.